**K&L GATES LLP**
Michael E. Martínez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8116
michael.martinez@klgates.com
lauren.donahue@klgates.com

Michael Stortz (SBN 139386)
4 Embarcadero Ctr., Ste 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
michael.stortz@klgates.com

Attorneys for Defendants SAS Institute Inc. and
IDeaS, Inc.

*Additional counsel on signature page*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| HANSON DAI, et al., | Lead Case No.: 4:24-cv-02537-JSW |
| Plaintiffs, | Member Case No.: 4:24-cv-03424-JSW |
| v. | **DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| SAS INSTITUTE INC., et al., | |
| Defendants. | Date: January 17, 2025 |
| | Time: 9:00 a.m. |
| | Judge: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS .................................................... 1

STATEMENT OF ISSUES TO BE DECIDED AND RELIEF REQUESTED ........................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.    PRELIMINARY STATEMENT .................................................................... 1

II.    STATEMENT OF RELEVANT ALLEGATIONS ........................................... 2

    A.    IDeaS' Revenue Management Software ..................................... 2

    B.    The Hotel Defendants ............................................................ 3

    C.    The Alleged Conspiracy ......................................................... 3

III.    LEGAL STANDARD .......................................................................... 4

IV.    ARGUMENT .................................................................................. 4

    A.    Plaintiffs Fail to Plausibly Allege Any Agreement Among the Hotel Defendants. 5

        1.    Plaintiffs fail to allege direct evidence of an agreement among the Hotel Defendants. ................................................................ 6

        2.    Plaintiffs fail to plead circumstantial facts plausibly suggesting an agreement among the Hotel Defendants. ................................ 7

            a)    Plaintiffs fail to plead facts suggesting the Hotel Defendants engaged in "parallel conduct." .................................... 7

            b)    The Complaint's supposed "plus factors" are irrelevant and do not plausibly suggest an agreement. ................................ 9

            c)    Plaintiffs fail to allege IDeaS acted as a conspiratorial "hub." ..... 13

            d)    *Interstate Circuit*'s theory of concerted action does not apply here. ................................................................ 14

    B.    The Complaint Does Not Allege a *Per Se* Violation of Antitrust Law. .............. 15

    C.    The Complaint Fails to Plausibly Allege a Rule-of-Reason Claim. .................... 16

        1.    The Complaint fails to allege either a relevant product or geographic market. ................................................................ 16

        2.    The Complaint fails to allege anticompetitive effects in the alleged relevant markets. ................................................................ 18

V.    CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1-800 Contacts, Inc. v. Fed. Trade Comm'n,*
  1 F.4th 102 (2d Cir. 2021) ...........................................................................19

*Arista Networks, Inc. v. Cisco Sys., Inc.,*
  2017 WL 6102804 (N.D. Cal. Oct. 10, 2017).........................................................18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..........................................................................................6, 10

*Barry v. Blue Cross of Cal.,*
  805 F.2d 866 (9th Cir. 1986) ...........................................................................14

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................ *passim*

*Brantley v. NBC Universal, Inc.,*
  675 F.3d 1192 (9th Cir. 2012) .......................................................................4, 19

*Brown Shoe Co. v. United States,*
  370 U.S. 294 (1962)....................................................................................17, 18

*California ex rel. Harris v. Safeway, Inc.,*
  651 F.3d 1118 (9th Cir. 2011) ........................................................................16

*Concord Assocs., L.P. v. Entm't Props. Tr.,*
  817 F.3d 46 (2d Cir. 2016).............................................................................18

*Coronavirus Rep. v. Apple, Inc.,*
  85 F.4th 948 (9th Cir. 2023) ...........................................................................17

*Dickson v. Microsoft Corp.,*
  309 F.3d 193 (4th Cir. 2002) ...........................................................................5

*Dominick v. Collectors Universe, Inc.,*
  2012 WL 4513548 (C.D. Cal. Oct. 1, 2012).........................................................20

*Eastman Kodak Co. v. Image Tech. Servs., Inc.,*
  504 U.S. 451 (1992)........................................................................................20

*Evanston Police Pension Fund v. McKesson Corp.,*
  411 F. Supp. 3d 580 (N.D. Cal. 2019) ..............................................................11

*Flaa v. Hollywood Foreign Press Ass'n,*
  55 F.4th 680 (9th Cir. 2022) ......................................................................16, 20

*Frost v. LG Elecs., Inc.*,
    801 F. App'x 496 (9th Cir. 2020) ...................................................................7

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ...............................................................16, 20

*Gibson v. Cendyn Grp., LLC*,
    2024 WL 2060260 (D. Nev. May 8, 2024) .................................12, 13, 15

*Gibson v. MGM Resorts Int'l*,
    2023 WL 7025996 (D. Nev. Oct. 24, 2023) ...............................8, 11, 12

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
    433 F. App'x 598 (9th Cir. 2011) ...............................................................17

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ...........................................................16, 17

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
    733 F. App'x 380 (9th Cir. 2018) ...............................................................20

*Honey Bum, LLC v. Fashion Nova, Inc.*,
    63 F.4th 813 (9th Cir. 2023) ........................................................................7

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc*,
    602 F.3d 237 (3d Cir.2010)............................................................................5

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir.1999)............................................................................7

*In re California Title Ins. Antitrust Litig.*,
    2009 WL 1458025 (N.D. Cal. May 21, 2009) ............................................9

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ......................................................................7

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
    28 F.4th 42 (9th Cir. 2022) ................................................................... *passim*

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Litig.*,
    2020 WL 8459279 (N.D. Cal. Nov. 24, 2020) ......................7, 8, 9, 11

*In re German Auto. Mfrs. Antitrust Litig.*,
    392 F. Supp. 3d 1059 (N.D. Cal. 2019) ...................................................10

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................7, 8

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)....................................................................9, 14

iii

*In re Loc. TV Advert. Antitrust Litig.*,
    2022 WL 3716202 (N.D. Ill. Aug. 29, 2022) ........................................................13

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ....................................................... *passim*

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
    2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023)........................................ *passim*

*In re Se. Milk Antitrust Litig.*,
    739 F.3d 262 (6th Cir. 2014) .........................................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2010 WL 2629728 (N.D. Cal. June 29, 2010) ...............................................6

*Interstate Cir. v. United States*.
    306 U.S. 208 (1939).....................................................................................14

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ................................................7, 9, 10

*Jung v. Ass'n of Am. Med. Colls.*,
    300 F. Supp. 2d 119 (D.D.C. 2004) ...............................................................6

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ....................................................................5, 6

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)......................................................................................15

*Marion Healthcare, LLC v. Becton Dickinson & Co.*,
    952 F.3d 832 (7th Cir. 2020) .......................................................................13

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
    795 F.3d 1124 (9th Cir. 2015) .......................................................................4

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
    2022 WL 2791201 (E.D. Cal. July 15, 2022) ...............................................19

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
    562 F. Supp. 3d 1073 (E.D. Cal. 2021)........................................................18

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018)................................................................................16, 18

*Oliver v. SD-3C LLC*,
    2016 WL 5950345 (N.D. Cal. Sept. 20, 2016) ...............................................8

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)..........................................................................17

iv

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ..................................................................................19

*Reilly v. Apple Inc.*,
  578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...................................................................17

*Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*,
  2013 WL 5694452 (N.D. Cal. Oct. 18, 2013)............................................................5

*S. Cal. Elec. Firm v. S. Cal. Edison Co.*,
  2023 WL 2629893 (C.D. Cal. Jan. 10, 2023) ...........................................................17

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) .....................................................................................6

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ....................................................................................10

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir.1998) ...................................................................................10

*Texaco Inc. v. Dagher*,
  547 U.S. 1 (2006).....................................................................................................15

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
  445 F. Supp. 3d 139 (N.D. Cal. 2020) ......................................................................12

*Top Rank, Inc. v. Haymon*,
  2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) .............................................................6

*United States v. Apple, Inc.*,
  791 F.3d 290 (2d Cir. 2015).....................................................................................13

*United States v. Conn. Nat'l Bank*,
  418 U.S. 656 (1974)..................................................................................................18

*White v. R.M. Packer Co.*,
  635 F.3d 571 (1st Cir. 2011) .....................................................................................11

*Yates v. Money Source, Inc.*,
  2023 WL 4305059 (E.D. Cal. June 30, 2023) .............................................................6

**RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

Fed. R. Evid. 201(b).....................................................................................................12

## OTHER AUTHORITIES

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th ed. 2019)........................................13

1

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on January 17, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jeffrey S. White, Oakland Courthouse, 1301 Clay Street, Oakland, California, Courtroom 5 – 2nd Floor, Defendants SAS Institute Inc.; IDeaS, Inc.; Wyndham Hotels & Resorts, Inc.; Hilton Domestic Operating Company Inc.; Four Seasons Hotels Limited; Omni Hotels Management Corporation; and Hyatt Corporation ("Defendants") will move under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs Hanson Dai, Max Chiswick, Adolph Robles, Steven Stack, Matthew Gilbert, Michael Molinaro, Tony Qian, Mark Lester, Steven Shattuck, and Joel Kamisher's ("Plaintiffs") Consolidated Complaint ("Complaint") (ECF No. 86). The Motion is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities, the arguments of counsel, and such other submissions and material that the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED AND RELIEF REQUESTED

Whether the Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and, therefore, should be dismissed.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Plaintiffs' Complaint contends that five hotel brands' use of revenue management software ("RMS") products offered by the same company somehow suggests they agreed to fix hotel room prices nationwide. But Plaintiffs do not allege facts plausibly suggesting such a conspiracy. Even accepting their allegations, the Complaint does not state a viable antitrust claim.

The Complaint attempts to allege a hub-and-spoke price-fixing conspiracy among the Hotel Defendants[1] and an RMS vendor, IDeaS, supposedly facilitated through the Hotel Defendants' use of a "shared pricing algorithm developed by [IDeaS] and through other means of communication, interactions, and signals to and with their co-conspirators." ¶ 1.[2] But the Complaint alleges no more than that IDeaS offers RMS products to help hotels more efficiently and effectively implement their respective revenue management goals and that each Hotel Defendant uses an IDeaS RMS product to help forecast demand

---

[1] *See infra* 3 n.3.

[2] "¶" and "¶¶" citations refer to corresponding numbered paragraphs in the Complaint.

and inform their independent pricing decisions for hotels they operate. The Complaint contains no well-pleaded factual allegations about Hotel Defendants' alleged price-fixing conduct, and no facts about their actual prices. It does *not* allege (1) a single inter-firm communication between the Hotel Defendants, (2) that the Hotel Defendants started to use an IDeaS RMS product at or near the same time, or (3) that they all use the same IDeaS RMS product. The Complaint's allegations are a textbook example of a "rimless" hub-and-spoke conspiracy, which is no horizontal conspiracy at all.

The Complaint fails to state a claim under Section 1 of the Sherman Act (15 U.S.C. § 1) and should be dismissed for three reasons: ***First***, the Complaint does not allege facts plausibly suggesting an agreement among the Hotel Defendants or that IDeaS plausibly acted as a conspiratorial "hub" to facilitate such an agreement, but instead alleges only separate, unremarkable vertical agreements between each individual Hotel Defendant and IDeaS. ***Second***, the *per se* rule does not apply to the alleged use of RMS—a commercially-available product that is not inherently anticompetitive, and with which courts have limited experience, thus excluding it from those limited categories of conduct that history and analysis have found unequivocally anticompetitive. ***Third***, the Complaint fails to state a claim under the rule of reason because it does not adequately allege either relevant product or geographic markets or anticompetitive effects of the alleged conspiracy.

At its core, the Complaint fundamentally mischaracterizes both revenue management and software products that organize and analyze data that businesses use in that process. RMS is commonly used in many industries because it can analyze large amounts of data more quickly and accurately than otherwise possible. There is nothing inherently anticompetitive about RMS or a business using third-party RMS to implement its revenue management strategy and inform its demand forecasting and pricing decisions.

## II.    STATEMENT OF RELEVANT ALLEGATIONS

### A.    IDeaS' Revenue Management Software

IDeaS is a technology company that provides RMS products to hotels. ¶ 21. Here, revenue management refers generally to a hotel's strategy to maximize revenue from hotel room stays. ¶ 59 n.9. According to the Complaint, IDeaS' RMS products analyze a hotel's own data, along with publicly available information, to forecast demand and inform pricing. ¶¶ 59 n.9, 62 n.12. Using an IDeaS RMS product can help a hotel increase occupancy, maximize revenue, and improve profitability. ¶¶ 50 n.6, 59

n.9.

IDeaS offers multiple RMS products. ¶ 50. Each client hotel chooses its product based on the "product features, benefits, [and] costs" that align with its own unique business model and objectives. ¶¶ 59 n.9, 62 n.12. The hotel then may customize its individual product to meet its unique needs, including configuring multiple pricing approaches (¶ 50 n.6) and setting its own price "floors & ceilings" (¶ 73).

### B.    The Hotel Defendants

The Hotel Defendants[3] are five hotel brands. They allegedly use IDeaS' RMS products to implement revenue management and generate pricing recommendations, demand forecasts, and other information for hotels they own or operate. ¶ 125. The Complaint alleges no conduct by any individual Hotel Defendant beyond the conclusory allegations defining the parties. It merely alleges the location of the Hotel Defendants' headquarters, a rough estimate of the number of branded hotels associated with most of the Hotel Defendants, and that the Hotel Defendants are among the largest hotel operators in the United States. ¶¶ 1, 22-26, 118. The Complaint does not contain any specific allegations about the Hotel Defendants' use of IDeaS' RMS products, including (i) whether each Hotel Defendant uses the same IDeaS RMS product, (ii) whether Hotel Defendants use their respective RMS products the same way, (iii) when any Hotel Defendant began using any IDeaS RMS product, (iv) whether the Hotel Defendants operate or set prices for any hotel under their affiliated brands, or (v) whether Hotel Defendants' prices, occupancy rates, or both have changed, much less changed in parallel.

### C.    The Alleged Conspiracy

The Complaint attempts to allege a hub-and-spoke price-fixing conspiracy. It alleges, beginning at an unknown time before April 26, 2020, the Hotel Defendants (the alleged spokes) agreed to fix hotel prices nationwide "through a shared pricing algorithm" developed by IDeaS (the alleged hub) and "through other means of communications, interactions, and signals to and with their co-conspirators." ¶¶ 1, 124. This conspiracy allegedly caused Plaintiffs to pay higher prices for hotel rooms. ¶ 109. But the

---

[3] The Hotel Defendants are Hilton, Wyndham, Four Seasons, Omni, and Hyatt. The Complaint identifies Accor as a non-defendant co-conspirator and states there are various other unnamed co-conspirators. ¶ 29. The Complaint refers to the Hotel Defendants as "Operator Defendants," but it does not allege the Hotel Defendants operate every hotel using their brands. The Complaint appears to recognize that hotels under the same brand may be separately owned or operated through a franchise arrangement or other management or ownership structure. *See, e.g.*, ¶¶ 77, 78 n.22.

3

allegations do not plausibly suggest that the Hotel Defendants conspired to fix prices. The Complaint does not identify any plausible concerted action among the Hotel Defendants, facilitated by IDeaS or themselves, related to their pricing decisions. It does not allege any "communications, interactions, and signals to and with their co-conspirators" about the alleged conspiracy, ¶ 1, or any circumstances from which an agreement among the Hotel Defendants could be inferred without such communications. It has no information about how the alleged conspiracy supposedly worked—who participated or what "prices" were fixed at which hotels. It does not allege that IDeaS requires Hotel Defendants to accept prices recommended by, or that Hotel Defendants delegated absolute pricing authority to, IDeaS' RMS products. It does not allege facts plausibly demonstrating that IDeaS facilitated an exchange of the Hotel Defendants' non-public pricing and occupancy data. It does not allege that prices were higher at Hotel Defendant hotels compared to non-Hotel Defendant hotels. And it does not provide or analyze any actual prices, at any hotel, operated by any Hotel Defendant, in any Relevant Sub-market, at any time.

## III.    LEGAL STANDARD

To state a claim under Section 1 of the Sherman Act, a plaintiff must allege (1) a "contract, combination or conspiracy among two or more persons or distinct business entities," (2) "which is intended to restrain or harm trade," (3) "which actually injures competition," and (4) "harm to the plaintiff from the anticompetitive conduct." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1129 (9th Cir. 2015) (citing *Brantley v. NBC Universal, Inc.,* 675 F.3d 1192, 1197 (9th Cir. 2012)). A complaint must "contain sufficient factual matter, taken as true, to plausibly suggest that an illegal agreement was made." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 46 (9th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Bare conclusions that defendants reached an "agreement" should be disregarded, as should allegations that "are no more consistent with an illegal agreement than with rational and competitive business strategies, independently adopted by firms acting within an interdependent market." *In re Musical Instruments & Equip. Antitrust Litig*., 798 F.3d 1186, 1189 (9th Cir. 2015).

## IV.    ARGUMENT

Plaintiffs do not plausibly allege a Section 1 claim. Plaintiffs attempt to allege a hub-and-spoke conspiracy, but fail to allege a "rim"—that is, they have not alleged the required horizontal agreement

among the Hotel Defendants. *See infra* Section IV.A. Even if Plaintiffs had pleaded a "rim," common use of an IDeaS RMS product is not *per se* illegal (*see infra* Section IV.B), and Plaintiffs fail to allege the necessary anticompetitive effects in a properly defined relevant market to state a plausible claim under the rule of reason (*see infra* Section IV.C).

### A.    Plaintiffs Fail to Plausibly Allege Any Agreement Among the Hotel Defendants.

"To state a claim under Section 1 of the Sherman Act, . . . claimants must plead not just ultimate facts (such as conspiracy), but evidentiary facts which, if true, will prove: . . .  a contract, combination or conspiracy among two or more persons or distinct business entities . . . ." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Plaintiffs may allege an agreement in two ways: by pleading "direct evidence" of an agreement, or by pleading "circumstantial evidence" of an agreement in the form of "parallel conduct" and "plus factors." *Musical Instruments*, 798 F.3d at 1193.

Alleging a hub-and-spoke conspiracy requires pleading (1) "a hub," (2) "spokes, such as competi[tors] . . . that enter into vertical agreements with the hub," and (3) "the rim of the wheel, which consists of horizontal agreements among the spokes." *Musical Instruments*, 798 F.3d at 1192 (citing *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir.2010)); *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, 2013 WL 5694452, at *9 (N.D. Cal. Oct. 18, 2013). Vertical agreements are between firms at different levels of the supply chain, while horizontal agreements are between competitors. *Musical Instruments*, 798 F.3d at 1191. In a hub-and-spoke conspiracy claim, the "key agreements" are those between the spokes because the claim "depends on establishing those horizontal agreements" among competitors. *Id.* at 1193. Here, those would be alleged agreements *among* the Hotel Defendants.

But Plaintiffs fail to adequately allege "the rim of the wheel"—the "key" horizontal agreements among the Hotel Defendants required to plausibly plead a hub-and-spoke conspiracy. *See Musical Instruments*, 798 F.3d at 1192 n.3 ("[A] rimless hub-and-spoke conspiracy is not a hub-and-spoke conspiracy at all (for what is a wheel without a rim?); it is a collection of *purely vertical agreements*.") (emphasis added); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002) ("[A] wheel without a rim is not a single conspiracy." (citing *Kotteakos v. United States*, 328 U.S. 750, 755 (1946))). Plaintiffs' failure to plead facts that would make an agreement among the Hotel Defendants plausible requires

dismissal. Plaintiffs do not allege direct evidentiary facts suggesting an agreement among Hotel Defendants, and their allegations of circumstantial evidentiary facts do not plausibly suggest an agreement exists. Because, taking all well-pleaded allegations as true, "the complaint does not answer" any of "the basic questions: who, did what, to whom (or with whom), where, and when," Plaintiffs' Section 1 claim must be dismissed. *Kendall*, 518 F.3d at 1048.

Indeed, Plaintiffs barely mention the individual Hotel Defendants, even though *Twombly* and *Iqbal* require that a plaintiff plead factual allegations as to each defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Twombly*, 550 U.S. at 555, 557 (2007). Plaintiffs here "indiscriminately" lump the Hotel Defendants together under "a blanket 'assertion of conspiracy,'" a tactic courts in this Circuit routinely reject. *See Yates v. Money Source, Inc.*, 2023 WL 4305059, at *4 (E.D. Cal. June 30, 2023) (quoting *Twombly*, 550 U.S. at 556); *Top Rank, Inc. v. Haymon*, 2015 WL 9948936, at *9 (C.D. Cal. Oct. 16, 2015). The Complaint alleges no conduct by any individual Hotel Defendant beyond the conclusory allegations defining the parties. ¶¶ 22-26. The rest of the Complaint impermissibly refers to conduct by the "Operator Defendants" collectively. *E.g.*, ¶ 77 ("Operator Defendants adopt IDeaS' pricing recommendations in nearly every instance and do so knowing their competitors are doing the same."); ¶ 96 ("The Operator Defendants also attended other user meetings and summits"). While *detailed* defendant-by-defendant allegations are not required, "an antitrust plaintiff must specifically plead how each individual defendant joined the alleged price-fixing conspiracy." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728, at *7 (N.D. Cal. June 29, 2010); *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) ("A plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group."); *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations" as to individual defendants).

### 1. Plaintiffs fail to allege direct evidence of an agreement among the Hotel Defendants.

Plaintiffs do not plead "direct evidence" of the Hotel Defendants' alleged agreement. "Direct evidence is smoking-gun evidence that 'establishes, without requiring any inferences' the existence of a

conspiracy." *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023) (quoting *In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999)). The Complaint does not identify any express agreement—memorialized in a document, recorded phone call, or witness statement—among the Hotel Defendants to fix prices. *See Frost v. LG Elecs., Inc.*, 801 F. App'x 496, 498 (9th Cir. 2020); *Citric Acid*, 191 F.3d at 1093-94 (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir.1999)).

        **2.**       **Plaintiffs fail to plead circumstantial facts plausibly suggesting an agreement among the Hotel Defendants.**

Absent direct evidence of agreement, Plaintiffs must plead circumstantial evidence, which requires facts demonstrating both (1) "parallel conduct" by each Hotel Defendant and (2) "sufficient plus factors to plausibly suggest that [the] parallel conduct arose from an agreement rather than independently." *DRAM*, 28 F.4th at 47; *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 915 n.10 (N.D. Cal. 2019). The Complaint fails on both counts.

        **a)**       **Plaintiffs fail to plead facts suggesting the Hotel Defendants engaged in "parallel conduct."**

Although Plaintiffs attempt to allege a price-fixing conspiracy, their Complaint lacks any adequate allegations about the prices charged by any Hotel Defendant or that the Hotel Defendants' prices moved in parallel. Parallel conduct can involve a pattern of parallel price increases by competitors, *Citric Acid*, 191 F.3d at 1102, or competitors' parallel adoption of unusually similar pricing practices "around the same time in response to similar market conditions." *Musical Instruments*, 798 F.3d at 1193 (citing *Twombly*, 550 U.S. at 553-54); *see also In re Dynamic Random Access Memory Indirect Purchaser Litig.*, 2020 WL 8459279, at *5 (N.D. Cal. Nov. 24, 2020) (pleading parallel conduct requires allegations that defendant-competitors "undertook some action simultaneously"); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007) (requiring allegations of "unusual, lockstep pricing behavior"). The Complaint does not allege that the Hotel Defendants engaged in parallel conduct.

While the Complaint baldly asserts that the Hotel Defendants charge high prices that have moved in parallel (¶¶ 7, 91-93), Plaintiffs provide no pricing information for any Hotel Defendant, let alone facts showing that the Hotel Defendants engaged in parallel pricing. Plaintiffs provide three bar graphs showing average daily rates, revenue per available room, and occupancy rates *annually for all hotel rooms*

*nationwide in the United States* in 2019, 2022, and 2023. ¶ 93. But these charts—which omit data from 2020 and 2021 (when the conspiracy allegedly began)—do not plausibly suggest *Hotel Defendants' prices* moved in parallel nationally or in any of the Relevant Sub-markets. Plaintiffs' reliance on such general, aggregated data cannot support an inference of parallel conduct because it does not show the Hotel Defendants' prices moved in an "unusual, lockstep" pattern. *See Oliver v. SD-3C LLC*, 2016 WL 5950345, at *6-7 (N.D. Cal. Sept. 20, 2016) ("Plaintiffs' allegations of parallel conduct consist only of two charts of annual data, and even this data is not directly relevant to the TAC's allegations."); *Musical Instruments*, 798 F.3d at 1197 & n.12 (noting that "over-inclusive" data did not suggest parallel conduct). Even if these charts reflected the Hotel Defendants' pricing, they would not show the requisite "complex and 'historically unprecedented' change in pricing structure made for no other discernable reason than a price-fixing conspiracy," which is necessary to permit an inference of a price-fixing agreement based on parallel conduct. *GPU*, 527 F. Supp. 2d at 1022 (quoting *Twombly*, 550 U.S. at 557 n.4).

To the extent Plaintiffs contend Defendants engaged in parallel conduct by using IDeaS' RMS products, these allegations fare no better. *First*, there are no allegations about *when* any of the Hotel Defendants began using IDeaS' RMS products, and there are no allegations that they all began using the same IDeaS RMS product at or near the same time. *See Gibson v. MGM Resorts Int'l*, 2023 WL 7025996, at *4 (D. Nev. Oct. 24, 2023) (plaintiffs failed to allege parallel conduct because the complaint provided no information about when three of four hotel defendants began using RMS); *DRAM*, 2020 WL 8459279, at *5 (requiring allegations that defendants "undertook some action simultaneously"). *Second*, the Complaint does not allege that each Hotel Defendant uses the *same* IDeaS RMS product.[4] Rather, the Complaint offers only the conclusory assertion that the Hotel Defendants conspired "[t]hrough their common use of IDeaS' RMS" (¶ 74), despite acknowledging IDeaS offers multiple RMS products, (*see* ¶ 50 (describing G3 RMS and referencing "IDeaS' other RMS solutions")), and that those products may be customized for and by each hotel (¶¶ 50 n.6, 73). Plaintiffs' failure to allege Hotel Defendants are using the same "precise software products" offered by IDeaS defeats an inference of parallel conduct. *See Gibson*, 2023 WL 7025996, at *3-4.

---

[4] While this basic failure is fatal to Plaintiffs' parallel conduct claim, Hotel Defendants' use of the same RMS product, by itself, would still fall well short of adequately pleading parallel conduct.

Without alleged parallel conduct among the Hotel Defendants, Plaintiffs have not plausibly alleged that an agreement can be inferred under Section 1, and their claim therefore should be dismissed.

**b)** **The Complaint's supposed "plus factors" are irrelevant and do not plausibly suggest an agreement.**

Even if the Complaint had adequately alleged parallel conduct, the Complaint must also allege facts that place such parallel conduct "in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. These "plus factors" typically include conduct that is against an entity's apparent economic self-interest, unusual interfirm communications, or an abrupt change in a long-standing business practice or pricing structure. *See Musical Instruments*, 798 F.3d at 1194. As this Court has previously observed, "in practice, many plus factors have been found unhelpful as 'simply restat[ing] that a market is interdependent.'" *DRAM*, 2020 WL 8459279, at *5 (alteration in original) (quoting *Musical Instruments*, 798 F.3d at 1194-95). Here, Plaintiffs fail to adequately allege any "plus factors" that, when viewed individually or all together, plausibly suggest that the alleged "parallel behavior . . . would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties." *Twombly*, 550 U.S. at 556 n.4 (citation and quotation omitted); *Jones*, 400 F. Supp. 3d 916-22. This failure also warrants dismissal.

**Opportunity to collude:** The Complaint alleges that IDeaS' RMS products provide the Hotel Defendants with "a forum offering a ready and continuing opportunity to collude." ¶ 95. But "opportunity, without more, is not a plausible basis to suggest a conspiracy." *In re California Title Ins. Antitrust Litig.*, 2009 WL 1458025, at *5 (N.D. Cal. May 21, 2009). That Hotel Defendants use a common RMS supplier does not support an inference of an illegal agreement among the Hotel Defendants. Similarly, the Complaint repeatedly asserts that Hotel Defendants "knew" each was using IDeaS' RMS products (*e.g.*, ¶¶ 6, 75, 78, 100), but mere knowledge that other hotel brands use one of multiple IDeaS RMS products does not make the Hotel Defendants co-conspirators. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 331 (3d Cir. 2010) ("[T]he allegations that each insurer knew about the 'competitive protections' purchased by the other insurer-partners manifestly do not 'describe[] . . . a horizontal conspiracy' to unreasonably restrain trade.") (second alteration in original).

**Industry events:** The Complaint alleges that IDeaS hosts "user-only events" (¶ 95) and "user meetings and summits" (¶¶ 96, 97), and sponsors or presents at industry conferences (¶ 98). But simply attending an industry event cannot support an inference of illegal agreement. *See Musical Instruments*, 798 F.3d at 1196 ("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement."). The Complaint also fails to allege any action taken by any Hotel Defendant in furtherance of the alleged conspiracy at these conferences. *In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1071-72 (N.D. Cal. 2019) (dismissing complaint that vaguely asserted defendants participated in industry "working groups and trade associations," but "almost never identif[ied] what was [allegedly] agreed to in these meetings"); *Jones*, 400 F. Supp. 3d at 917-18 (dismissing complaint where there were no allegations defendants attended relevant trade association meetings).

**Actions against self-interest:** The Complaint cursorily asserts Hotel Defendants acted against their own self-interest by sharing their confidential information with IDeaS. ¶ 100. The Court need not credit this conclusory assertion, *Iqbal*, 556 U.S. at 686, particularly because it is undermined by the documents cited in the Complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.")). According to the Complaint's own allegations, each Hotel Defendant provides their respective hotels' pricing and occupancy data to IDeaS because its RMS products are capable of processing and analyzing that data more quickly to generate more accurate demand forecasts and more profitable pricing recommendations for a given hotel, enabling each Hotel Defendant to more efficiently manage its business and increase revenue, occupancy, and optimize room revenue to drive profitability at their hotels. ¶¶ 59 n.9, 64, 66. Thus, under the Complaint's own allegations, the Hotel Defendants' provision of their respective confidential information to IDeaS does not "competitively disadvantage[]" them. ¶ 100. Rather, it furthers each Hotel Defendant's individual economic interest. The Complaint falls well short of pleading the type of "extreme action against self-interest" that could constitute an appropriate plus factor. *See DRAM*, 28 F.4th at 50.

**Common motive:** The Complaint asserts that the Hotel Defendants had "strong incentives" and

"strong motives" to collude because "hotel industry revenue dropped by nearly 50%" in 2020 during the Covid-19 pandemic and because IDeaS claims its products increase hotels' revenue. ¶¶ 101, 102. Courts do not consider a common motive to collude as a plus factor in price fixing cases. *Musical Instruments*, 798 F.3d at 1194 ("[C]ommon motive does not suggest an agreement. Any firm that believes that it could increase profits by raising prices has a motive to reach an advance agreement with its competitors."). Nor do courts consider a motive to maximize profits a plus factor, because it is just as consistent with procompetitive behavior. *Id.* at 1195 n.8 (rejecting "common motive" to increase profitability as a plus factor because it "always exists").

**Barriers to entry; inelastic demand:** The Complaint includes generalized and unsupported claims of "high barriers to entry and expansion" and "inelastic" demand for hotel rooms. ¶¶ 103, 104. But such conclusory assertions of "[h]igh barriers to entry and inelastic demand" do not "help[] to distinguish between agreement and mere conscious parallelism . . . ." *White v. R.M. Packer Co.*, 635 F.3d 571, 582 (1st Cir. 2011); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 597 (N.D. Cal. 2019) (rejecting argument that market features such as "inelastic demand, high barriers to entry, and lack of viable substitutes" supported a finding of conspiracy).

**Market concentration:** The Complaint summarily alleges that "the U.S. hotel market is concentrated" (¶ 118) but does not allege the Hotel Defendants' individual shares or collective market share—and certainly not in any relevant product or geographic market. Further, concentrated markets "make parallel *unilateral conduct more plausible* and thus cannot raise an inference of conspiracy." *DRAM*, 2020 WL 8459279, at *10 (emphasis added). As a result, a bare allegation of concentration, even "extreme concentration," is insufficient to allege an appropriate plus factor. *DRAM*, 28 F.4th at 52, 54 (affirming dismissal despite allegations of "extreme market concentration").

**Exchange of competitively sensitive information:** The Complaint does not (and could not) include any well-pleaded allegations that IDeaS' RMS products facilitated an agreement to fix prices through the exchange of the Hotel Defendants' non-public pricing and occupancy information. *See Gibson*, 2023 WL 7025996, at *4; *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 2023 WL 9004806, at *17 (M.D. Tenn. Dec. 28, 2023). Although Plaintiffs allege that each Hotel Defendant provides IDeaS with its *own* hotel's non-public data to generate price recommendations (¶¶ 64, 66), these

allegations alone are insufficient to take their antitrust claims "across the line from conceivable to plausible." *DRAM*, 28 F.4th at 47 (alteration in original) (quoting *Twombly*, 550 U.S. at 570). Critically, the Complaint contains no well-pleaded allegations that IDeaS provided any Hotel Defendant's non-public data to another Hotel Defendant, or that the price recommendations generated by an IDeaS' RMS product for any Hotel Defendant incorporated non-public information provided by *other* Hotel Defendants, or were the same pricing recommendation. *Gibson*, 2023 WL 7025996, at *4-5.

Plaintiffs muddle this point by using vague terms and labels such as "competitor data" or "competitors' pricing" when describing the type of data that can be input into IDeaS' RMS products. ¶¶ 4, 67, 68, 71, 72, 76, 125. But generic references to "competitor pricing" and "competitor data" do not support an inference that Hotel Defendants exchange nonpublic information with each other through their use of IDeaS' RMS products. *Gibson*, 2023 WL 7025996, at *4-6 (vague, ambiguous allegations about the use of "confidential" and "competitor" information within an RMS were insufficient to plausibly claim that "Hotel Operators exchange nonpublic information with each other through their use of [the] same software"). Plaintiffs themselves acknowledge that some "hotel pricing information is public" (¶ 65), and of course it is—anyone can look up prices on hotels' own websites or any number of travel aggregators like Priceline, Expedia, Kayak, Orbitz, and so on. *See* Fed. R. Evid. 201(b); *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (taking judicial notice of the existence of public websites).

Similarly, the Complaint makes many references to IDeaS RMS products' use of "non-public information." ¶¶ 52, 58, 64-69. But these statements likewise do not plausibly suggest anything beyond an IDeaS RMS product's use of a Hotel Defendant's *own* non-public information for the benefit of that hotel alone.

In sum, the Complaint includes no well-pleaded factual allegations that IDeaS' RMS products allow a Hotel Defendant (i) to share its own non-public information provided to IDeaS with another Hotel Defendant, (ii) to share its own price recommendations or demand forecasts with another Hotel Defendant, or (iii) to incorporate any non-public information provided to IDeaS by another Hotel Defendant into its own pricing recommendations or demand forecasts. *Gibson v. Cendyn Grp., LLC*, 2024 WL 2060260, at *7 (D. Nev. May 8, 2024) ("[M]erely using GuestRev or GroupRev without exchanging confidential

information with your competitors is more suggestive of a lawful independent decision to use a product that allegedly helps hotels do more than just decide how to price their hotel rooms in any event—such as analyzing potential guest value and forecasting demand based on historical data." (cleaned up)).

c) <b>Plaintiffs fail to allege IDeaS acted as a conspiratorial "hub."</b>

Plaintiffs' hub-and-spoke theory also requires well-pleaded allegations that IDeaS facilitated the Hotel Defendants' alleged agreement. *See United States v. Apple, Inc.*, 791 F.3d 290, 314 (2d Cir. 2015) (holding hub-and-spoke conspiracy requires "*both* vertical agreements between the hub and each spoke and a horizontal agreement among the spokes 'to adhere to the [hub's] terms' often because the spokes 'would not have gone along with [the vertical agreements] except on the understanding that the other [spokes] were agreeing to the same thing'") (emphasis and alternation in original) (quoting 6 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1402c (4th ed. 2019)); *see also Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 842 (7th Cir. 2020) (hub-and-spoke conspiracy must allege "both that there was a central coordinating party ('the hub'), and that each participant (along the 'rim') recognized that it was part of the greater agreement, and it coordinated or otherwise carried out its duties as part of the broader group").

But the Complaint contains no adequate allegations that IDeaS coordinated anything. In *Musical Instruments*, the Ninth Circuit found allegations that the alleged "hub" advocated for the adoption of allegedly anticompetitive agreements at trade association meetings attended by the spokes were *not enough* to plausibly allege an agreement *between* the spokes. 798 F.3d at 1196. Here the allegations are even more bare. There are no allegations, for example, that IDeaS discussed any Hotel Defendant's use of the various IDeaS' RMS products with any other Hotel Defendant, or that any Hotel Defendant conditioned its use of an IDeaS' RMS product on the other Hotel Defendants following suit. Nor are there any adequate allegations that IDeaS served as a conduit for Hotel Defendants to exchange their confidential information in furtherance of a supposed price-fixing conspiracy. *Gibson*, 2024 WL 2060260, at *5 (holding that a complaint's recitation of generic marketing materials on an RMS provider's website was insufficient to allege that it facilitated price fixing); *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *7 (N.D. Ill. Aug. 29, 2022) (dismissing Section 1 claim that ShareBuilder, a yield management solutions provider, facilitated a price-fixing conspiracy because the complaint "lack[ed] any

13

well-pled allegation that [ShareBuilder] secretly served to channel Defendant Company A's holding capacity data to Defendant Company B").

Plaintiffs have merely alleged a series of separate vertical agreements between IDeaS and each individual Hotel Defendant, which does not adequately allege an agreement between the Hotel Defendants. *See Ins. Brokerage*, 618 F.3d at 327 ("Contrary to plaintiffs' arguments, one cannot plausibly infer a horizontal agreement among a broker's insurer-partners from the mere fact that each insurer entered into a similar contingent commission agreement with the broker.").

### d) *Interstate Circuit*'s theory of concerted action does not apply here.

Plaintiffs suggest that IDeaS' public marketing statements are an "express invitation to collude" (¶ 95), presumably relying on a theory of "invitation and acceptance" from the Supreme Court's 1939 decision *Interstate Circuit v. United States*. 306 U.S. 208 (1939). But that decision does not apply here, and Plaintiffs' allegations show why. In *Interstate Circuit*, two movie theater operators that "dominate[d] the motion picture business" sent an identical letter to eight movie distributors, addressed to all of them, demanding that the distributors require second-run movie theaters to raise their ticket prices. *Id.* at 215-17. Each distributor complied. *Id.* at 218. The Supreme Court held that the "singular unanimity" of the distributors' actions—in what was a "radical departure" from past practice—established concerted action, particularly since each distributor risked a substantial loss of business without unanimous action. *Id.* at 221-23. The distributors thus had a "strong motive for concerted action." *Id.* at 222; *see also Ins. Brokerage*, 618 F.3d at 331 (focusing on fact that, absent horizontal agreements, distributor acquiescence in *Interstate Circuit* would have been "economically self-defeating").

No such facts are alleged here. In fact, the Complaint's allegations directly undermine *Interstate Circuit*'s applicability. Here, the marketing materials the Complaint quotes—the putative "invitation"— make no demands; they only tout benefits of IDeaS' RMS products. *See, e.g.*, ¶¶ 61-62. The Complaint shows benefits to any individual hotel using IDeaS' RMS, no matter how many others do so—and, in fact, even if it were the only hotel to do so. ¶ 59 n.9. And unlike in *Interstate Circuit*, the Complaint does not allege facts suggesting that the Hotel Defendants faced any risk if they ignored a hypothetical "invitation" from IDeaS. *See Barry v. Blue Cross of Cal.*, 805 F.2d 866, 869 (9th Cir. 1986) (noting a "showing of interdependence" is "a necessary condition" to infer a conspiracy under *Interstate Circuit*).

Unlike *Interstate Circuit*, Plaintiffs do not allege a single, discrete "invitation" proposing collective action. Rather, Plaintiffs rely on broad statements in marketing materials—published on various IDeaS webpages—that generally describe IDeaS' RMS products and their benefits. Nor are there facts suggesting that the Hotel Defendants engaged in uniform conduct accepting any such putative invitation in IDeaS' marketing materials—e.g., by adopting the same IDeaS RMS product at the same time in the same markets, or through absolute adherence to IDeaS' pricing recommendations. As a result, the "analogy to *Interstate Circuit* . . . does not quite work." *Gibson*, 2024 WL 2060260, at \*3.

**B.     The Complaint Does Not Allege a *Per Se* Violation of Antitrust Law.**

Courts presumptively apply the rule of reason to Section 1 claims, and it applies here. *See Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007). While Plaintiffs attempt to invoke the *per se* standard (¶¶ 3, 108), that standard applies only to a "narrow category of activity" that is "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5, 8 (2006) (quoting *Nat'l Soc'y of Prof. Eng'rs v. United States*, 435 U.S. 679, 692 (1978)). And the "*per se* rule is appropriate *only after* courts have had considerable experience with the type of restraint at issue, and *only if* they can predict with confidence that the restraint would be invalidated in all or almost all instances under the rule of reason." *Leegin*, 551 U.S. at 886-87 (emphases added) (citations omitted). Neither condition for applying the *per se* rule applies here.

To begin, the Hotel Defendants' allegedly common use of IDeaS' RMS products does not fall into that "narrow category of activity" that history and judicial experience counsels is always anticompetitive. *See RealPage*, 2023 WL 9004806, at \*23-24 (finding RMS use was not "a traditional straightforward price-fixing conspiracy" and thus "application of the *per se* standard is not appropriate"). While there are significant differences between this case and *RealPage*, the *RealPage* decision illustrates why the rule of reason applies to antitrust claims challenging the use of a third-party RMS product. There Judge Crenshaw explained that courts are rightly "hesitant to apply the *per se* standard to new or novel ways of doing business that have not yet been tested or studied by economists to conclusively determine that these types of conspiracies are *per se* anticompetitive." *Id.* at \*24 (citing *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1011 (7th Cir. 2012) (cleaned up)). The *RealPage* court found that where plaintiffs had alleged "vertical agreements between [the RMS provider] and each of [its clients], as well as some level of

horizontal conspiracy among those RMS Client Defendants to each contribute their commercially sensitive pricing and supply data for use by [the RMS]," such allegations were "not the straightforward form of horizontal price-fixing conspiracy for which courts apply the *per se* standard." *Id*. at \*23 (citing *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 271 (6th Cir. 2014) ("The *per se* rule should only be used when the restraint has such predictable and pernicious anticompetitive effect that there is limited potential for procompetitive benefit.") (cleaned up))).

Likewise, here there is no economic consensus that using a third-party RMS product increases prices or harms competition in almost all circumstances. Thus, the *per se* rule does not apply, and the claim must be assessed under the rule of reason.[5]

### C.    The Complaint Fails to Plausibly Allege a Rule-of-Reason Claim.

Because *per se* treatment is inappropriate here, the Court must evaluate the sufficiency of Plaintiffs' claim under the rule of reason. *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018). Under that standard, a plaintiff must allege (1) "relevant" product markets and geographic markets, and then (2) that the alleged conduct caused anticompetitive effects within those plausibly defined markets. *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 693 (9th Cir. 2022); *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020). The Complaint's cursory market-definition allegations are insufficient as to both a relevant product and geographic market. Additionally, the Complaint's failure to adequately allege the Hotel Defendants charged supracompetitive prices or reduced output, and reliance on statistics that are not specific to the Hotel Defendants or the alleged relevant markets, as well as conclusory assertions of market power, are insufficient to plausibly allege anticompetitive effects.

### 1.    The Complaint fails to allege either a relevant product or geographic market.

The Complaint's meager market allegations are an afterthought and the "'relevant market' definition is facially unsustainable." *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (citation omitted). The Complaint's product market definition—"hotel room rentals by the public"

---

[5] For the same reasons that Plaintiffs fail to allege a *per se* violation, they also fail to allege anticompetitive conduct subject to "quick look" analysis, which is appropriate only "where 'an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets.'" *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011) (quoting *California Dental Ass'n v. Fed. Trade Comm'n*, 526 U.S. 756, 770 (1999)).

(¶ 116)—lumps together two-star hotels and five-star hotels into the same product market even though common sense confirms consumers do not view those products as substitutes. Likewise, Plaintiffs' geographic markets—select Metropolitan Statistical Areas "MSAs" (¶¶ 117, 119)—are untenable because they make no effort to explain how *resident* commuting patterns inform how *travelers* choose hotel rooms.

**Product market:** Plaintiffs must plead a relevant product market that includes "the product at issue *as well as all economic substitutes* for the product." *Hicks*, 897 F.3d at 1120 (emphasis added) (citation omitted); *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023) ("Failing to define a relevant market alone is fatal to an antitrust claim."); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997) (affirming dismissal based on deficient product market). "Economic substitutes" are products that have a "reasonable interchangeability of use" or sufficient "cross-elasticity of demand" with the relevant product. *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

The alleged product market—"hotel room rentals by the public" (¶ 116)—is "facially unsustainable" because it includes hotel rooms that common sense and experience confirm are not economic substitutes for one another. *Hicks*, 897 F.3d at 1120-21. Indeed, Plaintiffs' product market for "hotel room rentals" sweeps in economy hotels, resort hotels, casino hotels, airport hotels, and luxury hotels as if they were all interchangeable. *See* ¶¶ 116, 121. For example, the Complaint does not explain why a consumer would view a luxury Four Seasons hotel in downtown Miami as reasonably interchangeable with an economy hotel near the Miami airport. ¶ 121; *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) ("The failure to allege a product market consisting of reasonably interchangeable goods renders the SAC 'facially unsustainable' and appropriate for dismissal."); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1109 (N.D. Cal. 2022) (dismissing complaint that failed to allege "facts explaining why the products included in the market are substitutes for one another"); *see also S. Cal. Elec. Firm v. S. Cal. Edison Co.*, 2023 WL 2629893, at *9 (C.D. Cal. Jan. 10, 2023) (proposed market definition that treated "an entire form of energy, instead of a specific function within that field" is "facially overbroad"). The Complaint is also silent about the cross-elasticity of demand or reasonable interchangeability of use between the types of hotel *rooms*—e.g., the penthouse suite vs. an economy double-queen room—included in the alleged product market, which also justifies dismissal. *See Reilly*, 578 F. Supp. 3d at 1108-09 (dismissing complaint that "lacks any discussion of cross-elasticity of

demand" for products included in Plaintiffs' proposed product market); *Arista Networks, Inc. v. Cisco Sys., Inc.*, 2017 WL 6102804, at *15 (N.D. Cal. Oct. 10, 2017) (dismissing complaint for failing to allege that "all products within the market are interchangeable with each other.").

**Geographic market:** The Complaint's facially deficient geographic market allegations are also an independent basis for dismissal. A relevant geographic market is the "area of effective competition . . . where buyers can turn for alternate sources of supply," *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073, 1081 (E.D. Cal. 2021), and must "correspond to the commercial realities of the industry," *Brown Shoe*, 370 U.S. at 336-37 (internal quotation marks omitted). A facially implausible geographic market definition is a basis for dismissal. *See Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 53 (2d Cir. 2016) (affirming dismissal where plaintiffs "provided no basis on which to justify their proposed geographic market definition").

The alleged Relevant Sub-markets are based on MSAs that Plaintiffs acknowledge are measured by "commuting." ¶¶ 117, 119. While commuting ranges may correspond to the geographic realities for residents, Plaintiffs fail to allege why commuting patterns are relevant to where hotel guests—which common sense and the Complaint itself acknowledge are not residents—choose to stay. *See RealPage*, 2023 WL 9004806, at *31 (dismissing claims that used MSAs to define market for university student housing); *United States v. Conn. Nat'l Bank*, 418 U.S. 656, 670 (1974) (recognizing that "[e]xclusive reliance" on MSAs "may lead to inaccuracies" because MSAs "are not sufficiently refined in terms of realistic commercial banking markets"). *Cf.* ¶¶ 1 n.1, 117-120. Indeed, Plaintiffs' own allegations demonstrate why a sub-market based on commuting patterns is absurd: "[c]onsumers generally rent hotel rooms because they are traveling to a specific location for an event or attraction and *are only willing to travel a limited distance from their hotel to the event or attraction.*" ¶ 104 (emphasis added). Plaintiffs' MSA-based Relevant Sub-markets are facially implausible because they fail to consider the common-sense commercial reality that travelers choose hotel rooms largely to be near their intended destination—e.g., an airport, a beach, a convention site, a tourist attraction. *See Brown Shoe*, 370 U.S. at 336-37.

### 2. The Complaint fails to allege anticompetitive effects in the alleged relevant markets.

The Complaint must allege anticompetitive effects in a relevant market. *Am. Express*, 585 U.S.

at 542. Anticompetitive effects can be alleged through either direct evidence—*i.e.*, proof of reduced output and higher prices or lower quality—or indirect evidence—proof of market power and harm to competition. *Id*. The Complaint alleges neither, pointing only to charts reflecting average rates, revenues, and occupancy of *all hotel rooms in the United States* (¶ 93) and claiming that the Hotel Defendants have market power based solely on the conclusory assertion that they are "several of the largest hotel operators" in the United States. ¶ 118.

**Direct evidence:** The Complaint fails to allege direct evidence of anticompetitive effects because it fails to adequately allege that the Hotel Defendants restricted output or charged supercompetitive prices. "When an antitrust plaintiff advances an antitrust claim based on direct evidence in the form of increased prices, the question is whether it can show an actual anticompetitive change in prices after the restraint was implemented." *See 1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 118 (2d Cir. 2021); *see also Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 2022 WL 2791201, at *7-8 (E.D. Cal. July 15, 2022) (no direct evidence where Plaintiffs failed to allege that "[d]efendants restricted . . . market-wide output" or that defendants' prices were higher after the alleged anticompetitive acquisition); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Bare allegations of increased revenue or higher prices alone are insufficient because increasing revenue or prices, without more, are "fully consistent with a free, competitive market." *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012).

The Complaint contains no factual allegations regarding the actual prices individual Hotel Defendants charged, the occupancy levels at any hotels they operated, the revenues of any Hotel Defendant hotels, or whether the Hotel Defendants' respective prices differed from any alleged non-conspirators' prices in the periods before or after the inception of the alleged conspiracy. Instead, the Complaint contains only conclusory allegations (¶¶ 109-113) and bar charts that reflect the "average daily rate," "occupancy," and "revenue per available room" *of all hotel rooms in the United States* in 2019, 2022, and 2023 (¶ 93). Aggregated statistics concerning all hotel rooms in the United States are irrelevant because they say nothing about the Hotel Defendants' respective pricing or occupancy in any alleged geographic sub-market, much less how their respective pricing differed (1) from non-conspirators' pricing; or (2) in the periods before and after the inception of the alleged conspiracy. Indeed, allegations of average *revenue* say nothing about *prices*, and evidence of increasing revenues and prices across all

hotel rooms in the United States could just as likely be the result of increased demand, a change in the type of travelers (e.g., business to leisure), or increased costs in the post-pandemic era. *See Qualcomm*, 969 F.3d at 990; *RealPage*, 2023 WL 9004806, at *28 (no direct evidence of anticompetitive effects where Plaintiffs' graphs failed to "show a supracompetitive increase in rent prices that indicate[d] price increases that cannot be explained by normal market forces"). Accordingly, the Complaint fails to adequately allege direct evidence of anticompetitive effects.

**Indirect evidence:** The Complaint also fails to plausibly allege indirect evidence of anticompetitive effects because there are no allegations to support its assertion that Defendants have market power within any relevant antitrust market. Market power is "the power to control prices or exclude competition" in each Relevant Sub-market. *Flaa*, 55 F.4th at 693 (citation omitted). To allege market power using indirect evidence, the Complaint must allege "dominant share" in the Relevant Sub-markets. *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380, 381-82 (9th Cir. 2018); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992) ("The existence of such power ordinarily is inferred from the seller's possession of a predominant share of the market").

The Complaint pleads no facts from which the Court can infer that the Hotel Defendants have market power in any relevant market. It does not allege which Hotel Defendants operate, if at all, in each alleged Relevant Sub-market. It does not allege the market share of any Hotel Defendant in any alleged Relevant Sub-market. Instead, the Complaint's sole allegation as to the Hotel Defendants' market power is that they allegedly are "several of the largest hotel operators in the U.S." ¶ 118. From that, the Complaint makes the conclusory leap that the Hotel Defendants "collectively have market power in each of the Relevant sub-markets." ¶ 118. Having alleged 17 separate Relevant Sub-markets (¶¶ 1 n.1, 117), Plaintiffs must do more than make conclusory allegations about the Hotel Defendants' market power, which, as alleged, is insufficient as a matter of law. *See Dominick v. Collectors Universe, Inc.*, 2012 WL 4513548, at *7 (C.D. Cal. Oct. 1, 2012).

Because the Complaint fails to plausibly allege direct or indirect evidence of anticompetitive effects, it must be dismissed.

## V.    CONCLUSION

For the reasons stated above, the Complaint should be dismissed for failure to state a claim.

Dated: August 29, 2024

Respectfully submitted,

*/s/ Ann H. MacDonald*

*/s/ Michael E. Martínez*

**ARENTFOX SCHIFF LLP**
Matthew B. Mock (SBN 316380)
44 Montgomery Street, 38th Floor
San Francisco, CA 94104
Telephone: (415) 757-5500
matthew.mock@afslaw.com

Ann H. MacDonald (SBN 331789)
Kylie S. Wood (*pro hac vice*)
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
ann.macdonald@afslaw.com
kylie.wood@afslaw.com

Suzanne L. Wahl (*pro hac vice*)
350 S. Main St., Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1517
suzanne.wahl@afslaw.com

*Attorneys for Wyndham Hotels & Resorts, Inc.*

**K&L GATES LLP**
Michael E. Martínez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
Brian J. Smith (*pro hac vice*)
John Susoreny (*pro hac vice*)
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8116
michael.martinez@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com
john.susoreny@klgates.com

Derek A. Sutton (*pro hac vice*)
301 Hillsborough St., Ste. 1200
Raleigh, North Carolina 27603
Telephone: (919) 743-7331
Facsimile: (919) 516-2024
derek.sutton@klgates.com

Michael Stortz (SBN 139386)
4 Embarcadero Ctr., Ste 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
michael.stortz@klgates.com

*Attorneys for Defendant SAS Institute Inc. and IDeaS, Inc.*

*/s/ Christopher M. Curran*

**WHITE & CASE LLP**
Christopher M. Curran (*pro hac vice*)
J. Mark Gidley (*pro hac vice*)
J. Frank Hogue (*pro hac vice*)
701 13th Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
ccurran@whitecase.com
mgidley@whitecase.com
fhogue@whitecase.com

Heather M. Burke (SBN 284100)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
hburke@whitecase.com

*Attorneys for Defendant Four Seasons Hotels Limited*

*/s/ Douglas E. Litvack*

**JENNER & BLOCK LLP**
Douglas E. Litvack (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
dlitvack@jenner.com
lharrison@jenner.com

An N. Tran
455 Market Street, Suite 2100
San Francisco, CA 94105
Tel: (628) 267-6800
atran@jenner.com

*Attorneys for Defendant Hyatt Hotel Corporation*

*/s/ Neal Potischman*

**DAVIS POLK & WARDWELL LLP**
Neal Potischman (SBN 254862)
Natalie Stoecklein (SBN 350939)
1600 El Camino Real
Menlo Park, CA 94025
Telephone: (650) 752-2021
Facsimile: (650) 752-2111
neal.potischman@davispolk.com
natalie.stoecklein@davispolk.com

D. Jarrett Arp (*pro hac vice*)
Mari Grace Byrne (*pro hac vice* forthcoming)
901 15th Street, NW
Washington, DC 20005
Telephone: (202) 962-7150
Facsimile: (202) 962-7102
jarrett.arp@davispolk.com
mari.grace@davispolk.com

Tina Joe (*pro hac vice*)
450 Lexington Ave
New York, NY 10017
Telephone: (212) 450-3541
Facsimile: (212) 701-6541
tina.joe@davispolk.com

*Attorneys for Defendant Hilton Domestic Operating Company Inc.*

*/s/ Eliot F. Turner*

**NORTON ROSE FULBRIGHT US LLP**
Joshua D. Lichtman (SBN 176143)
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: 213-892-9226
Telecopier: 213-892-9494
joshua.lichtman@nortonrosefulbright.com

Eliot F. Turner (*pro hac vice*)
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: 713-651-5113
Telecopier: 713-651-5246
eliot.turner@nortonrosefulbright.com

*Attorneys for Defendant Omni Hotels Management Corporation*

1

## **FILER'S ATTESTATION**

2

       Pursuant to Civil L.R. 5-1(h)(3), I, Michael Stortz, hereby attest that concurrence in the filing of

3

this document has been obtained from each of the above signatories.

4

Dated: August 29, 2024                   By: */s/ Michael Stortz*

5

                                Michael Stortz

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28