**K&L GATES LLP**
Michael E. Martínez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8116
michael.martinez@klgates.com
lauren.donahue@klgates.com

Michael Stortz (SBN 139386)
4 Embarcadero Ctr., Ste 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
michael.stortz@klgates.com

Attorneys for Defendant IDeaS, Inc.

*Additional counsel on signature page*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| HANSON DAI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> IDEAS, INC., et al., <br><br> Defendants. | Lead Case No.: 4:24-cv-02537-JSW <br> Member Case No.: 4:24-cv-03424-JSW <br><br> **DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: November 21, 2025 <br> Time: 9:00 a.m. <br> Judge: Hon. Jeffrey S. White |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on November 21, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jeffrey S. White, Oakland Courthouse, 1301 Clay Street, Oakland, California, Courtroom 5 – 2nd Floor, Defendants IDeaS, Inc.; Wyndham Hotels & Resorts, Inc.; Hilton Domestic Operating Company Inc.; Four Seasons Hotels Limited; Omni Hotels Management Corporation; and Hyatt Corporation ("Defendants") will move under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs Hanson Dai, Max Chiswick, Adolph Robles, Steven Stack, Matthew Gilbert, Michael Molinaro, Tony Qian, Mark Lester, Steven Shattuck, and Joel Kamisher's ("Plaintiffs") First Amended Consolidated Complaint ("FAC") (ECF No. 140). The Motion is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities, the arguments of counsel, and such other submissions and material that the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED AND RELIEF REQUESTED

Whether the FAC fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and, therefore, should be dismissed.

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................... i

STATEMENT OF ISSUES TO BE DECIDED AND RELIEF REQUESTED ............................. i

TABLE OF AUTHORITIES ............................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.      PRELIMINARY STATEMENT .............................................................. 1

II.     STATEMENT OF RELEVANT ALLEGATIONS ...................................... 2

     A.    IDeaS' G3 RMS ............................................................................ 2

     B.    Amadeus' Demand360 .................................................................. 2

     C.    Hotel Defendants' Use of G3 RMS ............................................. 3

     D.    Procedural History and Plaintiffs' Allegations ......................... 3

III.    LEGAL STANDARD ....................................................................... 3

IV.    ARGUMENT .................................................................................. 4

     A.    Plaintiffs Fail to Plausibly Allege Any Agreement Among Hotel Defendants. ..... 4

          1.    Plaintiffs again fail to plead "parallel conduct." ......................................... 4

          2.    The FAC's plus factors again do not plausibly suggest an agreement. ...... 8

     B.    Plaintiffs Fail to State a Claim Under the Rule of Reason. .................................. 13

          1.    The rule of reason applies to Plaintiffs' claim. ......................................... 13

          2.    Plaintiffs fail to allege plausible markets or anticompetitive effects within those markets. ......................................................................... 13

V.     CONCLUSION ............................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................1, 4, 8

*Brantley. v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012).............................................................................................4

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)...........................................................................................................14

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
  92 F.4th 381 (2d Cir. 2024) ................................................................................................5

*Cornish-Adebiyi v. Caesars Ent., Inc.*,
  2024 WL 4356188 (D.N.J. Sep. 30, 2024) ......................................................................6, 8

*Coronavirus Rep. v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) .............................................................................................14

*D'Augusta v. Am. Petroleum Inst.*,
  117 F.4th 1094 (9th Cir. 2024) ...........................................................................................5

*Dai v. SAS Inst. Inc.*,
  2025 WL 2078835 (N.D. Cal. July 18, 2025).............................................................. *passim*

*Dominick v. Collectors Universe, Inc.*,
  2012 WL 4513548 (C.D. Cal. Oct. 1, 2012)......................................................................15

*Duffy v. Yardi Sys., Inc.*,
  758 F. Supp. 3d 1283 (W.D. Wa. 2024) ............................................................................13

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992)...........................................................................................................15

*Gibson v. Cendyn Grp., LLC* ("*Gibson III*"),
  — F.4th —, 2025 WL 2371948 (9th Cir. Aug. 15, 2025) ...........................................1, 7, 9

*Gibson v. Cendyn Grp., LLC* ("*Gibson II*"),
  2024 WL 2060260 (D. Nev. May 8, 2024).................................................................6, 7, 12

*Gibson v. MGM Resorts Int'l* ("*Gibson I*"),
  2023 WL 7025996 (D. Nev. Oct. 24, 2023) ......................................................................11

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) .....................................................................................13, 14

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
    733 F. App'x 380 (9th Cir. 2018) ............................................................15

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ................................................................12

*In re Concrete & Cement Additives Antitrust Litig.*,
    2025 WL 1755193 (S.D.N.Y. June 25, 2025) ........................................5, 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    28 F.4th 42 (9th Cir. 2022) ......................................................................7

*In re German Auto. Mfrs. Antitrust Litig.*,
    392 F. Supp. 3d 1059 (N.D. Cal. 2019) ..................................................10

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..............................................4, 10

*In re Late Fee & Over-Limit Fee Litig.*,
    741 F.3d 1022 (9th Cir. 2014) ..................................................................6

*In re Local TV Advert. Antitrust Litig.*,
    2022 WL 3716202 (N.D. Ill. Aug. 29, 2022) ..........................................12

*In re Musical Instruments and Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) .......................................................... passim

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
    709 F. Supp. 3d 478 (M.D. Tenn. 2023) ............................................13, 14

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ..................................................8, 10

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ................................................................................13

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
    795 F.3d 1124 (9th Cir. 2015) ....................................................................4

*NCAA v. Alston*,
    594 U.S. 69 (2021) ..................................................................................13

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
    2022 WL 2791201 (E.D. Cal. July 15, 2022) ..........................................14

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ...........................................................................13, 14

*Okla. Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*,
    2024 WL 4202680 (S.D.N.Y. Sep. 13, 2024) ..........................................5

iv

*Oliver v. SD-3C LLC*,
    2016 WL 5950345 (N.D. Cal. Sep. 30, 2016) ....................................................... 5

*Payment Logistics Ltd. v. Lighthouse Network, LLC*,
    2018 WL 5311907 (S.D. Cal. Oct. 24, 2018) ..................................................... 14

*Portillo v. Costar Grp., Inc.*,
    2025 WL 2495053 (W.D. Wash. Aug. 29, 2025) ......................................... 11, 12

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022) ............................................................ 14

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,
    532 F.3d 963 (9th Cir. 2008) ........................................................................... 15

*Segal v. Amadeus IT Grp., S.A.*,
    2025 WL 963751 (N.D. Ill. Mar. 31, 2025) ..................................................... 12

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006) ............................................................................................ 13

*Top Rank, Inc. v. Haymon*,
    2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ................................................. 15

*United States v. U.S. Gypsum*,
    438 U.S. 422 (1978) ........................................................................................ 12

DEFS.' JOINT MOT. TO DISMISS & MEMO. IN SUPPORT | Case No. 4:24-cv-02537-JSW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

The FAC once again contends that five hotel brands' use of the same company's revenue management software ("RMS") products equates to fixing hotel room prices. But the FAC suffers from the same defect that caused the Court to dismiss Plaintiffs' original complaint:[1] failure to plead an agreement among Hotel Defendants.

The FAC's new and revised allegations do not cure this fatal shortcoming. As the Court recognized, Plaintiffs must plead parallel conduct and plus factors to support an inference of an agreement among Hotel Defendants. They again do neither. The FAC includes no factual allegations about the prices any Hotel Defendant charged in any market, including the FAC's newly proposed relevant markets for upscale hotel rooms. And the FAC contains allegations that affirmatively *undermine* any parallel conduct among Hotel Defendants—*e.g.*, that Hotel Defendants began using IDeaS' G3 RMS product at different times (often years apart), over a 10-year period. Plaintiffs fail to plead any parallel conduct from which an agreement among Hotel Defendants could be inferred, let alone an agreement to fix hotel room prices.

The FAC's alleged plus factors remain too weak to "nudge Plaintiffs' claims of a horizontal agreement across the line from possible to plausible." *Dai v. SAS Inst. Inc.*, 2025 WL 2078835, at *4 (N.D. Cal. July 18, 2025) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The FAC does not materially change the plus factor allegations regarding alleged actions against self-interest, motive and opportunity to conspire, and structural market features, which remain insufficient to infer an agreement among Hotel Defendants. Nor do the FAC's expanded allegations regarding Demand360—a market intelligence product offered by non-party Amadeus that provides its subscribers with *aggregated* and *anonymized* data—support a plausible agreement to fix prices by using IDeaS' RMS products.

Even if the FAC somehow pled an agreement among Hotel Defendants, it should still be dismissed for failure to allege an unreasonable restraint of trade. The *per se* rule does not apply to the alleged common use of RMS products, and there are no allegations about how that conduct lessened competition in any plausible relevant market. As the Ninth Circuit recently recognized, RMS products are "a tool in the struggle for commercial advantage." *Gibson v. Cendyn Grp., LLC*, — F.4th —, 2025 WL 2371948, at

---

[1] Consolidated Complaint, ECF No. 86 ("CC").

*7 (9th Cir. Aug. 15, 2025) ("*Gibson III*"). Different hotels using the same provider of RMS products "does not take away that struggle." *Id.*

Plaintiffs cannot cure the deficiencies in their allegations. Defendants respectfully request that the Court dismiss the FAC with prejudice.

## II.  STATEMENT OF RELEVANT ALLEGATIONS[2]

### A.  IDeaS' G3 RMS

IDeaS is a technology company that provides RMS products to hotels. ¶ 23. The FAC focuses primarily on IDeaS' G3 RMS, ¶ 76, which "deliver[s] scientific pricing and inventory control decisions [to hotel operators] … to drive optimal revenue performance across segments." ¶ 80. IDeaS' RMS products analyze a hotel's own data, publicly available information, and (at a hotel's option) aggregated, anonymized market data from Demand360. ¶¶ 82, 121, 148. Using IDeaS' RMS products can help a hotel maximize revenue, ¶ 80, and increase efficiency by automating manual tasks, ¶ 98.

### B.  Amadeus' Demand360

Non-party Amadeus Hospitality offers Demand360 to help its subscribers "improve decision making, maximize distribution strategies, and increase revenue per available room (RevPAR) as well as local market share." ¶ 66. As of 2025, 44,000 hotels and 35 million short-term rental properties contributed data to Demand360. ¶ 147 & n.61. Subscribers to Demand360 provide Amadeus with 12 months of occupancy information (*i.e.*, the number of rooms booked on future dates), ADR (average daily rate), and RevPAR. ¶¶ 140–41. ADR and RevPAR are revenue metrics, *not* actual sales prices. ¶ 144. Demand360 subscribers receive from Amadeus "competitive set" data: aggregated and anonymized occupancy, ADR, and RevPAR data for a competitive set of four or more hotels that subscribers select. ¶¶ 140, 146, 148.

Since at least 2016, IDeaS has offered G3 RMS users that separately subscribe to Demand360 the ability to integrate Demand360 competitive set data into G3 RMS. ¶¶ 9, 139, 148. A user's Demand360 competitive set data is one of many data sources that G3 RMS may, at a hotel's option, consider when forecasting future demand for that hotel. ¶¶ 83, 128, 132, 143.

---

[2] All citations of the FAC are designated by "¶" and the relevant number(s). For purposes of this Motion, Defendants assume, as they must, that all well-pleaded allegations in the FAC are true.

Hotel Defendants[3] allegedly began subscribing to Demand360 at different times over at least six years: Hyatt has used Demand360 "since its inception," ¶ 38; Hilton began using it "in or about" 2016, ¶ 26; Four Seasons began in 2016, ¶ 32; Omni began in 2019, ¶ 35; and Wyndham began in 2022, ¶ 29.

### C.    Hotel Defendants' Use of G3 RMS

Hotel Defendants are five hotel brands. Each has used G3 RMS[4] to implement revenue management and generate pricing recommendations, demand forecasts, and other information for their branded hotels. ¶ 205. Hotel Defendants began using G3 RMS at different times over a decade: Hilton "in or about 2012," ¶ 25; Four Seasons at an unspecified time prior to 2015, ¶ 31; Omni in March 2019, ¶ 34; Wyndam "in or about 2022," ¶ 28; and Hyatt in August 2022, ¶ 37. The FAC does not allege Hotel Defendants operate or determine pricing for each or any of their branded hotels.

### D.    Procedural History and Plaintiffs' Allegations

The FAC alleges that declining revenues from the Covid-19 pandemic motivated Hotel Defendants to fix hotel prices by using G3 RMS and Demand360, *see* ¶¶ 62–64, which allegedly increased prices and lowered occupancy rates, ¶ 206. The FAC alleges a new relevant product market of "upscale hotel room rentals by the public," ¶ 196, and retains the CC's 17 alleged geographic markets, ¶ 197.

The FAC still does not allege any communications among Hotel Defendants about the alleged conspiracy and provides no information about how the alleged conspiracy supposedly worked—who participated, how they participated, or what "prices" were fixed at which hotels. The FAC also does not allege that IDeaS requires Hotel Defendants to accept prices it recommends or that Hotel Defendants delegated pricing authority to IDeaS. The FAC attempts to plead a hub-and-spoke price-fixing conspiracy based only on Hotel Defendants' use of G3 RMS.

## III.    LEGAL STANDARD

To state a Section 1 claim, a plaintiff must allege (1) a "contract, combination or conspiracy among two or more persons or distinct business entities," (2) "which is intended to restrain or harm trade," (3) "which actually injures competition," and (4) "harm to the plaintiff from the anticompetitive conduct."

---

[3] The Hotel Defendants are Hilton, Wyndham, Four Seasons, Omni, and Hyatt. The FAC identifies Accor as a non-defendant co-conspirator and states there are various other unnamed co-conspirators. ¶ 41.
[4] The FAC alleges Wyndham has "its own IDeaS RMS ('RevIQ')," and that "[s]ome Wyndham hotels use RevIQ and some use the G3 RMS." ¶ 28. The FAC does not allege that G3 RMS and RevIQ are the same software.

1   *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1129 (9th Cir. 2015)

2   (citing *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012)).

3   **IV.    ARGUMENT**

4          As in the CC, Plaintiffs fail to plausibly allege a "rim" for their hub-and-spoke price-fixing

5   conspiracy because the FAC contains no plausible allegations that Hotel Defendants *agreed with each*

6   *other* to use G3 RMS to fix prices. Even if Plaintiffs had pleaded a "rim," common use of G3 RMS is not

7   *per se* illegal, and Plaintiffs fail to allege the necessary anticompetitive effects in their newly proposed

8   "upscale hotel room" markets under the rule of reason. The FAC should be dismissed with prejudice

9   because Plaintiffs failed to cure the same defects from the CC that this Court identified.

10         **A.      Plaintiffs Fail to Plausibly Allege Any Agreement Among Hotel Defendants.**

11         Plaintiffs may allege an agreement by pleading direct evidence, or by pleading circumstantial

12  evidence in the form of parallel conduct and plus factors. *In re Musical Instruments & Equip. Antitrust*

13  *Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015). The FAC adds no allegations of direct evidence, and thus

14  attempts to plead an agreement among Hotel Defendants with only circumstantial evidence. Plaintiffs

15  again fail to allege parallel conduct or plus factors to infer a plausible agreement among Hotel Defendants.

16         **1.      Plaintiffs again fail to plead "parallel conduct."**

17         The FAC asserts that after the Covid-19 pandemic, Hotel Defendants engaged in "unprecedented,

18  simultaneous parallel changes in prices" and made "complex, unprecedented, and parallel changes to

19  pricing and occupancy strategies." ¶ 69. But affixing labels from relevant case law does not plead *facts*

20  showing parallel conduct from which a price-fixing agreement can be inferred. After peeling away the

21  FAC's conclusory labels, the FAC (like the CC before it) lacks factual allegations that plausibly show

22  Hotel Defendants' prices increased in parallel, or that Hotel Defendants adopted unusually similar pricing

23  and occupancy strategies "around the same time in response to similar market conditions." *Musical*

24  *Instruments*, 798 F.3d at 1193 (citing *Twombly*, 550 U.S. at 553–54); *In re Graphics Processing Units*

25  *Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007) (requiring "unusual, lockstep … behavior").

26         **The FAC does not plead plausible parallel price increases by Hotel Defendants.** Instead, the

27  FAC relies on vague, boilerplate assertions that all Hotel Defendants made "unprecedented, simultaneous

28

parallel changes in prices." ¶ 69.[5] Such allegations fail to identify specific price increases without meaningful "differences in timing, amount, geography, and product line." *See In re Concrete & Cement Additives Antitrust Litig.*, 2025 WL 1755193, at *14 (S.D.N.Y. June 25, 2025); *see also D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024) (rejecting parallel conduct allegations consisting of "vague statements" that did not identify actions taken by any one defendant). As in the CC, Plaintiffs provide no actual pricing information to support these assertions—for either Hotel Defendants' hotels generally, or Hotel Defendants' "upscale hotels."

The FAC points to alleged national annual ADR statistics for all Hilton-branded hotels, from 2015 to 2024. ¶ 70.[6] But ADR is not price, ¶ 144, and in any event, the FAC includes no similar statistics for any other Hotel Defendant.[7] *See Okla. Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*, 2024 WL 4202680, at *8 (S.D.N.Y. Sept. 13, 2024) (requiring "specific allegations that demonstrate parallel conduct and *tie each defendant to the alleged price-fixing scheme*.") (emphasis added) (citations omitted). Further, nationwide annual averages of ADR are too broad, geographically and temporally, to support a plausible inference of parallel pricing.[8] *See Oliver*, 2016 WL 5950345, at *6–7; *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 400 (2d Cir. 2024) (averages "can flatten or hide trends that might tell a different story, and they can be finessed by shifting the time periods being averaged") (quotation marks and citation omitted); *Musical Instruments*, 798 F.3d at 1197 & n.12 ("over-inclusive" data did not suggest parallel conduct).

---

[5] *See also* ¶¶ 72 (asserting that "all" Hotel Defendants "increas[ed] prices significantly"); 163 ("room rates have increased to record levels"), 167 ("prices charged by the [Hotel] Defendants have moved in parallel throughout the Class Period"), 171 (asserting "parallel pricing patterns").

[6] The FAC's allegations regarding Hilton's nationwide ADR metrics starting in *2015* cannot show "complex, unprecedented" pricing changes due to Hilton's alleged agreement to use G3 RMS. Hilton allegedly began using G3 RMS in *2012*, ¶ 25, years before any other Hotel Defendant.

[7] The FAC's generic allegation that "Hyatt's ADR was up 14% from pre-Covid-19 levels by the end of 2022," ¶ 71, fails for the same reason. An allegation that one Hotel Defendant experienced a 14% increase in ADR, over an indeterminate, multi-year period, is too broad a statistic to plead parallel price increases, especially when that statistic is not apparently limited to Hyatt's U.S. hotels. *See* ¶ 37 & n.13 (alleging that Hyatt operates globally); *Oliver v. SD-3C LLC*, 2016 WL 5950345, at *6 (N.D. Cal. Sep. 30, 2016). Moreover, the FAC's allegation that Hyatt's EPS was up "[i]n the three years following the pandemic," ¶ 74, appears to include data from *before* Hyatt announced its rollout of G3 RMS in "August 2022," ¶ 37.

[8] The FAC again includes three bar graphs showing ADR, RevPAR, and occupancy rates *annually* for *all hotel rooms nationwide* in 2019, 2022, and 2023. ¶ 170; CC ¶ 93. This overinclusive chart fails to support Plaintiffs' parallel pricing allegations for the same reason. *Dai*, 2025 WL 2078835, at *6.

**The FAC does not plausibly plead Hotel Defendants changed their pricing and occupancy strategies in parallel.** Plaintiffs point to Hotel Defendants' adoption of G3 RMS and Demand360 as evidence of parallel changes to their pricing and occupancy strategies. Plaintiffs' reliance on these allegations is misplaced, for several reasons.

*First*, the FAC alleges that Hotel Defendants adopted G3 RMS at different times over a decade: Hilton in 2012; Four Seasons at an unspecified time before 2015; Omni in March 2019; Wyndham in 2022; and Hyatt in August 2022. *See supra* Section II.C. The FAC's allegations are similar regarding Hotel Defendants' alleged adoption of Demand360: Hyatt at an unspecified time many years *before* G3 RMS; Hilton in 2016 (four years *after* G3 RMS); Four Seasons at an unspecified time in 2016; Omni at an unspecified time in or after 2019; and Wyndham in February 2022. *See supra* Section II.B.

While "Plaintiffs need not allege that each Hotel Defendant acted at the exact same moment in time," *Dai*, 2025 WL 2078835, at *4, "unseasonably long delays between the allegedly parallel acts will 'refute rather than support' allegations of conspiracy." *Concrete & Cement Additives*, 2025 WL 1755193, at *13 (quoting *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014)). Hotel Defendants' alleged adoption of G3 RMS at different times over 10 years (and for Demand360, over more than six years) is far too "slow … [to] raise the specter of collusion." *Musical Instruments*, 798 F.3d at 1196; *see also id.* at 1198 n.14 (adoption of similar pricing policies over three years not persuasive evidence of parallel conduct); *Gibson v. Cendyn Grp., LLC*, 2024 WL 2060260, at *4 (D. Nev. May 8, 2024) (*Gibson II*) (allegations that casino hotels began using RMS products at different times over a 10-year period insufficient because "the gaps in time between when [defendants] agreed to license [the software] suggest[ed] a tacit agreement … [was] implausible"), *aff'd by Gibson III*; *Cornish-Adebiyi v. Caesars Ent., Inc.*, 2024 WL 4356188, at *4–7 (D.N.J. Sep. 30, 2024) (finding conduct "not quite 'parallel'" where defendants' subscriptions to RMS products occurred over a 14-year period).

*Second*, the FAC relies on conclusory allegations that Hotel Defendants collectively shifted away from a business strategy of maximizing occupancy to maximizing revenue by using G3 RMS in response to declining revenue from the Covid-19 pandemic. ¶¶ 64, 68–75. But Plaintiffs cannot allege Hotel Defendants shifted their business strategy in 2020 by using G3 RMS because Hilton, Four Seasons, and Omni allegedly used G3 RMS many years *before* the pandemic. *See supra* Section II.C. In any event,

Hotel Defendants' alleged adoption over a period of years of a general business strategy to maximize revenue is insufficient to plead parallel conduct. *See Musical Instruments*, 798 F.3d at 1196, 1198 n.14; *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 48–49 (9th Cir. 2022). Even if Plaintiffs could plead a parallel shift in business strategy by Hotel Defendants (they do not), that shift would not suggest a preceding agreement among Hotel Defendants because maximizing revenue (or profits), rather than occupancy, would be entirely consistent with each hotel's legitimate *independent* business interests. *See Gibson III*, 2025 WL 2371948, at *8 n.9 ("Assuming this shift in focus occurred, it would not be anticompetitive for a firm to maximize profitability"); *DRAM*, 28 F.4th at 48–49, 51 ("progressive adoption of similar policies across an industry … does not reveal anything more than similar reaction to similar pressures within an interdependent market," and "industry-wide change in strategy" is not agreement) (quotation marks and citation omitted).[9]

    *Third*, the FAC's conclusory allegation that "hotel operators adopted IDeaS' pricing decisions '99%' of the time," *e.g.*, ¶ 99,[10] does not constitute parallel conduct. Fundamentally, Plaintiffs do not allege any facts about when, how, or why a Hotel Defendant allegedly decided to adopt pricing recommendations made by IDeaS' RMS products 99% of the time. The FAC therefore is silent on whether Hotel Defendants allegedly adopted this strategy in parallel or not. And regardless, a high acceptance rate of G3 RMS' pricing recommendations does not suggest an agreement among the Hotel Defendants to fix prices exists, because that conduct is entirely consistent with their independent business interests.[11] *See Gibson II*, 2024 WL 2060260, at *6 ("to accept the prices that the algorithm recommends does not plausibly allege an illegal agreement"); *Gibson III*, 2025 WL 2371948, at *9 ("[A] hotel might adopt …

---

[9] Plaintiffs' cited statistics that purport to show Hilton and Hyatt's ADR increased above pre-pandemic levels without an equivalent increase in occupancy, ¶¶ 70–71, and that Hilton and Hyatt experienced higher company-wide profitability after the Covid-19 pandemic, ¶¶ 73–74, fail for the same reasons stated above. Further, Hilton and Hyatt are global companies, rendering allegations about their "company-wide gross profits" of minimal, if any, probative value here.

[10] Here and elsewhere, the FAC emphasizes marketing materials using the term "decisions," rather than "recommendations." *See, e.g.*, ¶¶ 100–01. But, as the portions of the marketing materials quoted in the FAC explain on their face, the word "decisions" was used in those materials to communicate that IDeaS' RMS products enable more efficient implementation and greater integration with users' selling systems, and eliminate the need for manual, piecemeal data entry. *See* ¶ 101. There is no reasonable inference to be drawn from the quoted materials that "decisions" meant that Hotel Defendants are required to accept proposed prices or that they had delegated pricing authority to IDeaS.

[11] As explained below, the FAC alleges numerous reasons why using IDeaS' RMS products is in a hotel's self-interest. *See, e.g.*, ¶¶ 92, 98, 103, 107.

7

pricing recommendations at high rates because it trusts the recommendations or wants the ease of implementing the recommendations").

*Finally*, the FAC alleges that Hotel Defendants have adopted changes in "pricing and occupancy strategy" because G3 RMS enables "controls" such as "pricing floors." *See, e.g.*, ¶ 75.[12] The FAC does not allege that any one hotel's pricing floor is the same as any other's, that any one hotel's pricing floor is shared with any other hotel, or—most importantly—any facts about when or how each Hotel Defendant adopted the alleged pricing floors to show that they engaged in parallel conduct.[13]

The FAC contains no well-pled allegations of parallel pricing or a parallel change in pricing or occupancy strategies to infer an agreement among Hotel Defendants to fix hotel room prices.

### 2. The FAC's plus factors again do not plausibly suggest an agreement.

The FAC fails to materially alter the CC's plus factor allegations to add facts placing any allegedly parallel conduct "in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. Plaintiffs' plus factor allegations remain "more analogous to *Cornish-Adeybi* and the *Gibson* cases than to *In re Real Page* and *Duffy*," *Dai*, 2025 WL 2078835, at *5, because, when viewed individually or collectively, the FAC's plus factors do not plausibly suggest that the alleged "parallel behavior … would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties." *Twombly*, 550 U.S. at 556 n.4 (citation and quotation marks omitted); *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 916–22 (N.D. Cal. 2019).

**Actions against self-interest.** Plaintiffs have still not plausibly alleged that (1) Hotel Defendants would not use G3 RMS unless others did so, or (2) Hotel Defendants would not share their confidential information with IDeaS absent an agreement by others to share the same information. To the contrary, the FAC alleges that each Hotel Defendant's adoption of G3 RMS was consistent with its self-interest regardless of whether other Hotel Defendants used G3 RMS. That is because IDeaS' RMS products help

---

[12] The FAC omits the CC's allegation, citing a third-party website containing a summary of users' experiences with IDeaS' RMS products, that users set their own price "floors & ceilings." CC ¶ 73 & n.19.
[13] The FAC conflates "pricing floors" with a metric in G3 RMS called "Last Room Value" ("LRV"). *See* ¶¶ 11, 134. A user's pricing floor and the LRV metric are not the same. *See* ¶ 134 (the dynamic LRV metric "opens all rates during slow times."). In any event, the same deficiencies regarding the FAC's allegations about pricing floors apply equally to the FAC's allegations about the LRV metric.

optimize revenue and profits, ¶¶ 5 (noting IDeaS' RMS products contained features to protect "overall profitability"), 80 (IDeaS' RMS products drive "optimal revenue performance across segments"); and saved time and led to more accurate forecasting, ¶¶ 98 (IDeaS' RMS products "led to a reduction in labor needed to set prices"), 117 (IDeaS' RMS products allow revenue managers to "focus on tactics and strategy rather than manual data entry").[14] Indeed, Hotel Defendants' adoption of G3 RMS at different times over 10 years—and Hilton's alleged use for several years before *any other* Hotel Defendant's adoption—underscore that each had independent, self-interested reasons to use G3 RMS that had nothing to do with their competitors using it. At most, Plaintiffs have alleged that Hotel Defendants knew that other hotels also used G3 RMS, ¶¶ 161–62 (alleging IDeaS disclosed and advertised its clients' names), but antitrust law does not "require [a competitor] to decline to take advantage of a service because its competitors already use that service." *Gibson III*, 2025 WL 2371948, at *8.

The FAC likewise demonstrates that each Hotel Defendant independently benefited from sharing its competitively sensitive data with IDeaS, because that data allowed G3 RMS to provide pricing recommendations to that Hotel Defendant, saving time and money. ¶¶ 5, 80, 98, 117. Plaintiffs have not plausibly alleged that Hotel Defendants agreed that the information shared with IDeaS would also be shared with other Hotel Defendants. *See infra* pp. 10–13. For all these reasons, Hotel Defendants' use of G3 RMS is not "extreme action against self-interest," that "would be so perilous in the absence of advance agreement that no reasonable firm would make the challenged move without such an agreement." *Musical Instruments*, 798 F.3d at 1195 (affirming dismissal where "the complaint itself … provides ample independent business reasons why each of the manufacturers" engaged in the challenged conduct).

**Common motive and opportunity to collude.** The Court should likewise reject Plaintiffs' contention that Hotel Defendants' alleged motive and opportunity to collude support a plausible inference of an agreement. The Court previously determined that Plaintiffs' "motive" allegations were deficient, noting that "they do not include any facts about how the pandemic impacted the Hotel Defendants rather than the hotel industry in general or why such a motive would be more indicative of collusion than market

---

[14] The FAC baldly asserts that setting pricing floors is against a Hotel Defendant's economic self-interest. *See* ¶ 159. But the FAC actually alleges that pricing floors ensure a hotel's use of dynamic pricing does not inadvertently lead to prices that reduce its profitability. ¶¶ 75, 169. If anything, such allegations suggest procompetitive unilateral conduct, not an unlawful agreement. *See Gibson III*, 2025 WL 2371948, at *8 n.9 ("[I]ndeed, a basic economic assumption is that a firm's aim is to maximize profit").

interdependence." *Dai*, 2025 WL 2078835, at *4 (citing *Musical Instruments*, 798 F.3d at 1194–95); *see also* ¶ 62 ("The US hotel industry was hit exceptionally hard by the Covid-19 pandemic."). Plaintiffs did not include any new, non-conclusory factual allegations supporting motive. *Compare* CC ¶¶ 101–02, *with* FAC ¶¶ 181–82. Accordingly, the Court should again reject "motive" as a plus factor here.

As for opportunity, Plaintiffs' new allegations do not fix the flaws the Court previously identified. While the FAC includes a few additional sentences regarding industry conferences offered by IDeaS, "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *Musical Instruments*, 798 F.3d at 1196; *GPU*, 527 F. Supp. 2d at 1023 (similar). As before, Plaintiffs do not allege that any agreement was struck at those events or that any subsequent collective action correlated with those events. *See Dai*, 2025 WL 2078835, at *4. Indeed, the FAC does not allege that any particular Hotel Defendant employee actually attended a particular meeting, much less had any communication with an employee of another Hotel Defendant at such a meeting.[15] Moreover, the few cited industry conference events occurred years after the conspiracy allegedly started and thus cannot support an inference that Hotel Defendants reached an agreement in or before 2020. *See, e.g.*, ¶¶ 173 (citing 2022 conference materials), 175–77 (citing conference materials from 2024 to 2026); *In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1071–72 (N.D. Cal. 2019) (dismissing complaint that asserted defendants participated in trade groups but "almost never identif[ied] what was [allegedly] agreed to in these meetings"); *Jones*, 400 F. Supp. 3d at 917–18 (noting plaintiffs did not allege defendants' attendance at trade shows correlated with alleged price increases).

**Structural market features.** The Court previously held that Plaintiffs' conclusory allegations regarding structural market features are "not strong enough on [their] own to nudge Plaintiffs' claims of a horizontal agreement across the line from possible to plausible." *Dai*, 2025 WL 2078835, at *4 (citation omitted). The FAC contains no new allegations that would support this plus factor and so the result here should be no different. *Compare* CC ¶¶ 103–04, *with* FAC ¶¶ 183–84.

**Exchange of competitively sensitive information.** The FAC alleges no facts that would "permit the Court to reasonably infer an exchange of confidential information." *Dai*, 2025 WL 2078835, at *5.

---

[15] For example, Plaintiffs allege unnamed "executives" from Hotel Defendants attended unspecified "conferences," ¶ 174, but do not allege any communications among them, or that such "executives" were responsible for pricing at any of Hotel Defendants' hotels.

G3 RMS: The FAC, like the CC, does not expressly allege that IDeaS shares confidential information it receives from any Hotel Defendant with another Hotel Defendant. While the FAC contains numerous allegations that G3 RMS uses "non-public" data to generate pricing and occupancy "decisions," *see, e.g.*, ¶¶ 119, 120, 121, 123, 130, it critically does not distinguish whether such non-public data was the hotel's *own* data, or a competitor's. *See Dai*, 2025 WL 2078835, at *5; *Gibson v. MGM Resorts Int'l*, 2023 WL 7025996, at *4–5 (D. Nev. Oct. 24, 2023) ("*Gibson I*"). Similarly, the FAC frequently references "competitor data," *e.g.*, ¶ 137, "competitor rates," *e.g.*, ¶¶ 132, 136, and "competitor pricing" or "competitors' pricing," *e.g.*, ¶¶ 84, 87, 91, 123, 125, 132, but acknowledges that competitor retail prices are publicly available, ¶¶ 121, 128. Plaintiffs' cited sources confirm that public competitor rates are fed into IDeaS' RMS. *See, e.g.*, ¶ 115 n.45 (stating G3 RMS integrates external rate shopping). Such allegations do not plausibly suggest that Hotel Defendants are exchanging confidential information to facilitate a price-fixing agreement. *See Dai*, 2025 WL 2078835, at *5 ("[T]here are no facts to make it reasonable to infer the competitor pricing is based on non-public information."); *Gibson I*, 2023 WL 7025996, at *4–6 (ambiguous allegations about the use of "confidential" and "competitor" information insufficient to plausibly allege that hotel operators "exchange nonpublic information with each other through their use of [the] same software"); *cf. Portillo v. Costar Grp., Inc.*, 2025 WL 2495053, at *5 (W.D. Wash. Aug. 29, 2025) (dismissing information-sharing claim against hotels because "plaintiffs' repeated use of phrases like 'price information,' 'pricing information,' and 'information about current and forward-looking … pricing data' [were] linguistic stretches.").

The FAC also fails to allege any facts showing that G3 RMS pools confidential information separately provided by each Hotel Defendant for purposes of generating pricing and occupancy "decisions." While the FAC contains numerous vague allegations—*e.g.*, ¶ 119 (G3 RMS "collects numerous pieces of non-public data from [Hotel Defendants]" and "plugs this data into its algorithm")[16]— Plaintiffs do not and cannot allege that IDeaS commingles competitively-sensitive data it receives from users. *Dai*, 2025 WL 2078835, at *5. And the FAC's allegations that thousands of properties use G3 RMS, ¶¶ 90–91, and that G3 RMS uses artificial intelligence to improve over time based on these properties'

---

[16] *See also* ¶¶ 123 (G3 RMS "folds all key data sources directly into optimization"); 126 (G3 RMS "incorporates competitive and market data (rates, demand, reputation) directly into optimization").

data, ¶¶ 85, 88–90, are effectively the same "machine learning" theory rejected in *Gibson II*. *See* 2024 WL 2060260, at *6 (theory that RMS products "got better at predicting optimal hotel room pricing with the benefit of information provided by each customer … does not plausibly suggest that [defendants] tacitly agreed to fix prices by licensing [the RMS products]").

<u>Demand360:</u> Plaintiffs allege that Demand360 provides its subscribers with competitive set data, ¶ 148, which can be incorporated into G3 RMS, ¶ 9. *See supra* Section II.B. But competitive set data is made up of aggregated, anonymized, and averaged non-price statistics, ¶¶ 148–49, which are "generally favored in the antitrust context." *In re Local TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *3 (N.D. Ill. Aug. 29, 2022). Aggregated information serves a "legitimate purpose" of informing hotels of market conditions, *see In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999), as it can "increase economic efficiency and render markets more, rather than less competitive," *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978).[17] Accordingly, Plaintiffs' conclusory allegations that Demand360 shares "competitor non-public" data, *e.g.*, ¶ 152, "non-public, competitively sensitive data," *e.g.*, ¶¶ 126, 156, or "non-public competitor data," ¶¶ 128, 146, conflict with Plaintiffs' allegations that Demand360 shares only aggregated data.[18]

In sum, the FAC includes no well-pleaded factual allegations that G3 RMS allows any Hotel Defendant to (i) share its own non-public, competitively sensitive information provided to IDeaS or Amadeus with another Hotel Defendant, (ii) share its own price recommendations or demand forecasts with another Hotel Defendant, or (iii) incorporate any non-public, competitively sensitive information provided to IDeaS or Demand360 by another Hotel Defendant into its own pricing recommendations or demand forecasts. *See Gibson II*, 2024 WL 2060260, at *7 ("[U]sing [RMS] without exchanging confidential information with your competitors is more suggestive of a lawful independent decision to use [RMS].") (citation and quotation marks omitted).

---

[17] The FAC contains a conclusory assertion that Demand360 competitive set data "can be de-anonymized with ease." ¶ 156. Plaintiffs do not allege that any Hotel Defendant ever did actually de-anonymize Demand360 competitive set data, or even attempted to do so. And even if Demand360 competitive set data could be disaggregated and deanonymized, Plaintiffs do not allege that such data would reflect actual prices charged by competitors. *See Portillo*, 2025 WL 2495053, at *1 (dismissing Section 1 claim alleging that third-party benchmarking reports containing aggregated future occupancy and revenue data could theoretically be disaggregated).

[18] One court has already rejected a Section 1 claim based on hotels' alleged use of Demand360. *See Segal v. Amadeus IT Grp., S.A.*, 2025 WL 963751, at *5 (N.D. Ill. Mar. 31, 2025).

The FAC (like the CC) fails to allege any plus factors to infer a plausible agreement among Hotel Defendants.

### B.    Plaintiffs Fail to State a Claim Under the Rule of Reason.

The presumptive rule of reason applies, which requires plausible allegations of anticompetitive effects in a properly defined relevant market. Plaintiffs have not done so. Their claim should be dismissed.

#### 1.    The rule of reason applies to Plaintiffs' claim.

Restraints are presumptively evaluated under the rule of reason. *See Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). By contrast, the "quick look" and *per se* rules apply only after courts "have amassed 'considerable experience with the type of restraint at issue' and '*can predict with confidence that it would be invalidated in all or almost all instances*.'" *NCAA v. Alston*, 594 U.S. 69, 89 (2021) (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886–87 (2007)) (emphasis added). One court evaluating claims like Plaintiffs' found the *per se* rule inapplicable. *See In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 519–20 (M.D. Tenn. 2023).[19] There, the court properly found that the claim was "not the straightforward form of horizontal price-fixing conspiracy for which courts apply the *per se* standard." *Id.* at 520 (citation omitted). The same is true here.

#### 2.    Plaintiffs fail to allege plausible markets or anticompetitive effects within those markets.

To state a rule-of-reason claim, a plaintiff must allege a plausible relevant market and anticompetitive effects within it. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (affirming grant of motion to dismiss for failure to allege relevant market). Without properly defined markets there is no way to gauge whether Hotel Defendants have market power (and thus can adversely affect competition). *See Ohio v. Am. Express Co.*, 585 U.S. 529, 543 n.7 (2018).

**Plaintiffs fail to plead plausible relevant markets.** Plaintiffs now allege a relevant product market "for upscale hotel room rentals by the public." ¶ 196. But they fail to define the precise boundaries of their putative market. A relevant product market must include "the product at issue *as well as all*

---

[19] The court in *Duffy v. Yardi Sys., Inc.*, 758 F. Supp. 3d 1283, 1297 (W.D. Wash. 2024), reached the opposite conclusion. That was wrong. The *Duffy* court failed to adequately consider the potential procompetitive benefits of RMS, which Plaintiffs acknowledge exist in their FAC, *see, e.g.*, ¶¶ 5, 80, 98, 117, or that there is no economic consensus that an agreement to use RMS is almost invariably anticompetitive.

1    *economic substitutes* for the product." *Hicks*, 897 F.3d at 1120 (emphasis added) (citation omitted);

2    *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 956 (9th Cir. 2023). "Economic substitutes" are products

3    that have a "reasonable interchangeability of use" or sufficient "cross-elasticity of demand" with the

4    relevant product. *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). Plaintiffs do not allege *what*

5    "upscale hotel rooms" are; why other types of hotel rooms are not reasonable substitutes; or whether Hotel

6    Defendants even *offer* "upscale hotel rooms" for rent. The FAC adds only one conclusory allegation to

7    support its newly defined upscale market: "[u]pscale hotels situated in prime locations … tend to have a

8    lower price elasticity because they cater to high-end customers who are willing to pay premium prices,

9    particularly in the short term." ¶ 184. Such a conclusory allegation is insufficient. *See Payment Logistics*

10   *Ltd. v. Lighthouse Network, LLC*, 2018 WL 5311907, at *3 (S.D. Cal. Oct. 24, 2018). Absent factual

11   allegations describing what "upscale hotel rooms" are and why other hotel rooms are not substitutes,

12   Plaintiffs cannot show that competition in such markets has been affected. *See Reilly v. Apple Inc.*, 578 F.

13   Supp. 3d 1098, 1108–09 (N.D. Cal. 2022) (dismissing complaint that "lacks any discussion of cross-

14   elasticity of demand" for products included in proposed product market).

15          Plaintiffs also fail to plead a plausible geographic market. Plaintiffs define the alleged Relevant

16   Sub-markets based on MSAs, which Plaintiffs acknowledge are measured by "commuting." ¶ 199. But

17   Plaintiffs fail to allege why commuting patterns are relevant to where hotel guests choose to stay. *See*

18   *RealPage*, 709 F. Supp. 3d at 528–30 (dismissing claims that used MSAs to define the market for

19   university student housing).

20          **Plaintiffs fail to plead anticompetitive effects.** Anticompetitive effects can be alleged through

21   direct evidence—*i.e.*, proof of reduced output and higher prices or lower quality—or indirect evidence:

22   *i.e.*, proof of market power and harm to competition. *Am. Express*, 585 U.S. at 542. The FAC does neither.

23          The FAC fails to plead direct evidence because it fails to allege facts showing that Hotel

24   Defendants restricted output or charged supracompetitive prices in the alleged "upscale hotel room"

25   market. *See Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 2022 WL 2791201, at *7–8 (E.D. Cal. July

26   15, 2022) (no direct evidence where plaintiffs did not allege that "[d]efendants restricted … market-wide

27   output" or that defendants increased prices after the allegedly anticompetitive acquisition). The FAC

28   alleges no facts about actual prices, occupancy levels, or revenues at any Hotel Defendant's "upscale"

hotels, or whether any Hotel Defendant's prices for "upscale hotel rooms" differed from non-conspirators' prices. Instead, the FAC contains only conclusory allegations, ¶¶ 188–94, and bar charts that purport to reflect the ADR, occupancy, and RevPAR *of all hotel rooms* in the United States in 2019, 2022, and 2023, ¶ 170. Aggregated statistics about *all hotel rooms* in the United States, including those not alleged to use G3 RMS, are irrelevant. Those statistics say nothing about Hotel Defendants' respective pricing or occupancy in the putative relevant market, much less how their respective pricing differed (a) from non-conspirators' pricing; or (b) in the periods before and after the inception of the alleged conspiracy. *See Top Rank, Inc. v. Haymon*, 2015 WL 9948936, at *8–9 (C.D. Cal. Oct. 16, 2015). Nor do Plaintiffs try to separate out the effects of ordinary economic forces, such as inflation or the market disruption from the Covid-19 pandemic, from the alleged conspiracy's effects.

Plaintiffs also fail to plausibly allege indirect evidence of anticompetitive effects because they make no factual allegations to support their assertion that Defendants had market power. To allege market power using indirect evidence, the FAC must allege "dominant share" in the Relevant Sub-markets. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992) ("The existence of such power ordinarily is inferred from the seller's possession of a predominant share of the market") (citation omitted). Plaintiffs do not allege which Hotel Defendants operate in each alleged Relevant Sub-market or what their individual or combined market share in any alleged Relevant Sub-market was. Instead, the FAC jumps from its assertion that Hotel Defendants are "several of the largest hotel operators in the U.S.," ¶ 198, to the conclusion that they "collectively have market power in each of the Relevant Sub-markets," ¶ 198. Having alleged 17 sub-markets, ¶ 197, Plaintiffs must do more than make conclusory allegations about Hotel Defendants' market power. *See Dominick v. Collectors Universe, Inc.*, 2012 WL 4513548, at *7 (C.D. Cal. Oct. 1, 2012); *Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 972–73 (9th Cir. 2008).

## V.    CONCLUSION

The FAC should be dismissed with prejudice because it "fail[s] to cure, or even meaningfully address" the "deficiencies explained in [this Court's] original order." *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380, 382 (9th Cir. 2018).

Dated: September 15, 2025

Respectfully submitted,

*/s/ Ann H. MacDonald*

*/s/ Michael Stortz*

**ARENTFOX SCHIFF LLP**
Matthew B. Mock (SBN 316380)
44 Montgomery Street, 38th Floor
San Francisco, CA 94104
Telephone: (415) 757-5500
matthew.mock@afslaw.com

Ann H. MacDonald (*pro hac vice*)
Kylie S. Wood (SBN 331789)
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
ann.macdonald@afslaw.com
kylie.wood@afslaw.com

Suzanne L. Wahl (*pro hac vice*)
350 S. Main St., Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1517
suzanne.wahl@afslaw.com

*Attorneys for Defendant Wyndham Hotels & Resorts, Inc.*

**K&L GATES LLP**
Michael E. Martínez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
John Susoreny (*pro hac vice*)
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8116
michael.martinez@klgates.com
lauren.donahue@klgates.com
john.susoreny@klgates.com

Derek A. Sutton (*pro hac vice*)
301 Hillsborough St., Ste. 1200
Raleigh, North Carolina 27603
Telephone: (919) 743-7331
Facsimile: (919) 516-2024
derek.sutton@klgates.com

Michael Stortz (SBN 139386)
4 Embarcadero Ctr., Ste 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
michael.stortz@klgates.com

*Attorneys for Defendant IDeaS, Inc.*

/s/ Christopher M. Curran

**WHITE & CASE LLP**
Christopher M. Curran (*pro hac vice*)
J. Mark Gidley (*pro hac vice*)
J. Frank Hogue (*pro hac vice*)
701 13th Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
ccurran@whitecase.com
mgidley@whitecase.com
fhogue@whitecase.com

Jeremy K. Ostrander (SBN 233489)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
jostrander@whitecase.com

*Attorneys for Defendant Four Seasons Hotels Limited*

/s/ Neal Potischman

**DAVIS POLK & WARDWELL LLP**
Neal Potischman (SBN 254862)
Natalie Stoecklein (SBN 350939)
900 Middlefield Road
Redwood City, CA 94063
Telephone: (650) 752-2021
Facsimile: (650) 752-3621
neal.potischman@davispolk.com
natalie.stoecklein@davispolk.com

D. Jarrett Arp (*pro hac vice*)
Mari Grace (*pro hac vice*)
1050 17th Street NW
Washington, DC 20036
Telephone: (202) 962-7150
Facsimile: (202) 962-7102
jarrett.arp@davispolk.com
mari.grace@davispolk.com

Tina Joe (*pro hac vice*)
450 Lexington Ave
New York, NY 10017
Telephone: (212) 450-3541
Facsimile: (212) 701-6541
tina.joe@davispolk.com

*Attorneys for Defendant Hilton Domestic Operating Company Inc.*

/s/ Douglas E. Litvack

**JENNER & BLOCK LLP**
Douglas E. Litvack (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
dlitvack@jenner.com
lharrison@jenner.com

An N. Tran
455 Market Street, Suite 2100
San Francisco, CA 94105
Tel: (628) 267-6800
atran@jenner.com

*Attorneys for Defendant Hyatt Corporation*

/s/ Eliot F. Turner

**NORTON ROSE FULBRIGHT US LLP**
Joshua D. Lichtman (SBN 176143)
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: 213-892-9226
Facsimile: 213-892-9494
joshua.lichtman@nortonrosefulbright.com

Eliot F. Turner (*pro hac vice*)
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: 713-651-5113
Telecopier: 713-651-5246
eliot.turner@nortonrosefulbright.com

*Attorneys for Defendant Omni Hotels Management Corporation*

# FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(h)(3), I, Michael Stortz, hereby attest that concurrence in the filing of this document has been obtained from each of the above signatories.

Dated: September 15, 2025

By: */s/ Michael Stortz*
Michael Stortz