**K&L GATES LLP**
Michael E. Martínez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8116
michael.martinez@klgates.com
lauren.donahue@klgates.com

Michael Stortz (SBN 139386)
4 Embarcadero Ctr., Ste 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
michael.stortz@klgates.com

Attorneys for Defendant IDeaS, Inc.

*Additional counsel on signature page*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

|  |  |
|---|---|
| HANSON DAI, et al., | Lead Case No.: 4:24-cv-02537-JSW |
| Plaintiffs, | Member Case No.: 4:24-cv-03424-JSW |
| v. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS** |
| IDEAS, INC., et al., | |
| Defendants. | Date: January 16, 2026 |
|  | Time: 9:00 a.m. |
|  | Judge: Hon. Jeffrey S. White |

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ................................................................................1

II.   ARGUMENT ........................................................................................................1

      A.    Plaintiffs Fail to Plausibly Allege an Agreement Among Hotel Defendants. .....................1

            1.    *American Needle* does not provide a framework for pleading circumstantial evidence of a price-fixing agreement...................................1

            2.    *Interstate Circuit* does not provide an independent framework to allege an agreement and the FAC satisfies none of its elements. ...........................2

            3.    Plaintiffs do not plausibly allege an agreement among Hotel Defendants through parallel conduct and plus factors. .............................4

                  a)    No parallel conduct ....................................................4

                  b)    No plausible plus factors .............................................6

      B.    Plaintiffs Fail to Allege an Unreasonable Restraint of Trade. ...........................10

            1.    The rule of reason applies. ........................................................10

            2.    Plaintiffs fail to plead an unreasonable restraint of trade under the rule of reason.....................................................................12

                  a)    Plaintiffs fail to plead direct evidence of anticompetitive effects.............12

                  b)    Plaintiffs fail to plead indirect evidence of anticompetitive effects. .........13

      C.    The Court Should Not Grant Leave to Amend. ..............................................15

III.  CONCLUSION......................................................................................................15

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. FTC*,
    1 F.4th 102 (2d Cir. 2021) ...................................................................................................12

*Am. Needle, Inc. v. NFL*,
    560 U.S. 183 (2010) .........................................................................................................1, 2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................15

*B & R Supermarket, Inc. v. Visa, Inc.*,
    2016 WL 5725010 (N.D. Cal. Sep. 30, 2016) ....................................................................10

*Barry v. Blue Cross of Cal.*,
    805 F.2d 866 (9th Cir. 1986) .............................................................................................2, 3

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
    691 F. App'x 389 (9th Cir. 2017) ......................................................................................5, 6

*Broad. Music, Inc. v. Columbia Broad. Sys. Inc.*,
    441 U.S. 1 (1979) ...............................................................................................................12

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ................................................................................................6

*In re Cal. Bail Bond Antitrust Litig.*,
    2022 WL 19975276 (N.D. Cal. Nov. 7, 2022) .....................................................................9

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) .............................................................................................................2

*Cornish-Adebiyi v. Caesars Ent., Inc.*,
    2024 WL 4356188 (D.N.J. Sep. 30, 2024) ..............................................................3, 4, 6, 8

*Dai v. SAS Inst. Inc.*,
    2025 WL 2078835 (N.D. Cal. July 18, 2025)............................................................. *passim*

*Dominick v. Collectors Universe, Inc.*,
    2012 WL 4513548 (C.D. Cal. Oct. 1, 2012)..................................................................12, 14

*Duffy v. Yardi Sys., Inc.*,
    758 F. Supp. 3d 1283 (W.D. Wash. 2024)................................................................. *passim*

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
    28 F.4th 42 (9th Cir. 2022) ..................................................................................................9

ii

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

*In re Flash Memory Antitrust Litig.*,
 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...........................................................................9

*Flextronics Int'l USA, Inc. v. Panasonic Hldgs. Corp.*,
 2023 WL 4677017 (9th Cir. July 21, 2023)................................................................9, 10

*Gibson v. Cendyn Grp., LLC* ("*Gibson II*"),
 2024 WL 2060260 (D. Nev. May 8, 2024)................................................................ *passim*

*Gibson v. Cendyn Grp., LLC* ("*Gibson III*"),
 148 F.4th 1069 (9th Cir. 2025) ...................................................................................3, 11

*Gibson v. MGM Resorts Int'l* ("*Gibson I*"),
 2023 WL 7025996 (D. Nev. Oct. 24, 2023) .....................................................................6

*Cal. ex rel. Harris v. Safeway, Inc.*,
 651 F.3d 1118 (9th Cir. 2011) ...............................................................................11, 12

*Indus. Bldg. Materials, Inc. v. Interchemical Corp.*,
 437 F.2d 1336 (9th Cir. 1970) .......................................................................................4

*Intel Corp. v. Fortress Inv. Grp., LLC*,
 2022 WL 16756365 (9th Cir. 2022) ..............................................................................12

*Intel Corp. v. Fortress Inv. Grp. LLC*,
 511 F. Supp. 3d 1006 (N.D. Cal. 2021) .........................................................................13

*Interstate Circuit v. United States*,
 306 U.S. 208 (1939).....................................................................................................2, 3

*Kelsey K. v. NFL Enterprises, LLC*,
 254 F. Supp. 3d 1140 (N.D. Cal. 2017) ..........................................................................9

*Kendall v. Visa U.S.A., Inc.*,
 518 F.3d 1042 (9th Cir. 2008) .......................................................................................15

*McCarthy v. Intercontinental Exch., Inc.*,
 2021 WL 6072817 (N.D. Cal. Dec. 23, 2021)................................................................11

*Meyer v. Kalanick*,
 174 F. Supp. 3d 817 (S.D.N.Y. 2016)..............................................................................3

*In re Musical Instruments & Equip. Antitrust Litig.*,
 798 F.3d 1186 (9th Cir. 2015) ................................................................................ *passim*

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
 2022 WL 2791201 (E.D. Cal. July 15, 2022) .................................................................12

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
 472 U.S. 284 (1985)................................................................................................10, 11

iii

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

*Ohio v. Am. Express Co.*,
   585 U.S. 529 (2018) ............................................................................................12

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
   32 F.4th 824 (9th Cir. 2022) ...............................................................................3

*In re Pork Antitrust Litig.*,
   781 F. Supp. 3d 758 (D. Minn. 2025) ...............................................................2, 6

*Ramirez v. Ghilotti Bros. Inc.*,
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) ............................................................6, 7

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
   709 F. Supp. 3d 478 (M.D. Tenn. 2023) ....................................................8, 11, 13

*Reilly v. Apple Inc.*,
   2022 WL 1215305 (N.D. Cal. Apr. 25, 2022) ...................................................15

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,
   532 F.3d 963 (9th Cir. 2008) .............................................................................14

*Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*,
   2022 WL 2199938 (C.D. Cal. Mar. 7, 2022) ..................................................6, 7

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ...........................................................................15

*Top Rank, Inc. v. Haymon*,
   2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ..............................................12, 14

*U.S. Care, Inc. v. Pioneer Life Ins. Co. of Ill.*,
   244 F. Supp. 2d 1057 (C.D. Cal. 2002) ............................................................15

*United States v. Citizens & S. Nat. Bank*,
   422 U.S. 86 (1975) ............................................................................................11

*United States v. Container Corp. of Am.*,
   393 U.S. 333 (1969) ..........................................................................................11

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ..........................................................................................11

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940) ..........................................................................................11

*United States v. Trenton Potteries Co.*,
   273 U.S. 392 (1927) ..........................................................................................11

iv

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .................................................................................................15

Fed. R. Civ. P. 11 .......................................................................................................15

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

## I.     PRELIMINARY STATEMENT

Despite having the opportunity to amend their original complaint based on this Court's prior dismissal order, Plaintiffs have yet again failed to plead an antitrust claim.[1] Plaintiffs' Opposition (ECF No. 146) confirms that the FAC suffers from the same fatal defect as the CC: Plaintiffs fail to plead a plausible agreement among Hotel Defendants. Plaintiffs do not have direct evidence of such an agreement. And Plaintiffs' Opposition, instead of addressing the specific deficiencies identified in Defendants' Motion (ECF No. 142), advances unsupported legal theories to excuse their inability to allege an agreement through circumstantial evidence, *i.e.*, parallel conduct and plus factors. The Court should dismiss the FAC with prejudice for failure to cure this fundamental flaw.

Plaintiffs also fail to allege the second element of their antitrust claim: an unreasonable restraint of trade. That pleading failure provides an independent basis to dismiss the FAC. At bottom, Plaintiffs' antitrust claim is implausible. Far from suggesting a conspiracy, the FAC makes clear that Hotel Defendants independently licensed G3 RMS at different times over the course of a decade.

## II.     ARGUMENT

### A.     Plaintiffs Fail to Plausibly Allege an Agreement Among Hotel Defendants.

Defendants' Motion explains why the FAC does not allege facts sufficient to infer a plausible agreement through parallel conduct and plus factors. *See* Mot. 4–13. Lacking confidence in the FAC's allegations, Plaintiffs' Opposition relegates parallel conduct and plus factors to a third-order argument, leading with two other theories. The first—premised on *American Needle*—badly misreads Supreme Court precedent. And the second is an argument under *Interstate Circuit* recycled from the CC that the Court previously rejected. Plaintiffs cannot escape that the FAC does not fix the CC's parallel conduct and plus-factor deficiencies, which requires dismissal. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1189 (9th Cir. 2015).

#### 1.     *American Needle* does not provide a framework for pleading circumstantial evidence of a price-fixing agreement.

The Opposition invokes *American Needle* as an independent way to plead a Section 1 agreement with circumstantial evidence. *See* Opp. 5 (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183,

---

[1] Consolidated Complaint, ECF No. 86 ("CC"); Order Granting Motion to Dismiss, ECF No. 137.

1

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

195 (2010)). But *American Needle* does not address the standard for pleading circumstantial evidence of a conspiratorial agreement. Rather, *American Needle* addresses whether two entities are capable of conspiring or instead are merely a "single entity" and thus are not "separate economic actors pursuing separate economic interests" capable of concerted action. 560 U.S. at 195 (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984)). The Opposition cites no case that treats *American Needle* as an alternative method of pleading an agreement, and this Court should reject Plaintiffs' attempt to sidestep their pleading obligations under well-established Ninth Circuit law. *See Musical Instruments*, 798 F.3d at 1189 (requiring plausible allegations of parallel conduct and plus factors); *Dai v. SAS Inst. Inc.*, 2025 WL 2078835, *2–5 (N.D. Cal. July 18, 2025).

### 2. *Interstate Circuit* does not provide an independent framework to allege an agreement and the FAC satisfies none of its elements.

The Opposition's second theory argues that *Interstate Circuit v. United States*, 306 U.S. 208 (1939), provides an "independent way in which plaintiffs can plead concerted action." Opp. 6. Plaintiffs made the same argument in support of the CC, but this Court rejected it, correctly noting that Plaintiffs must plead a plausible horizontal agreement under *Twombly* and *Musical Instruments*. *See Dai*, 2025 WL 2078835 at *2–5; *see also Gibson v. Cendyn Grp., LLC* ("*Gibson II*"), 2024 WL 2060260, at *3 (D. Nev. May 8, 2024).[2]

Even if *Interstate Circuit* did provide a distinct way to plead a plausible agreement (and it does not), the Opposition's arguments are unsupported. Opp. 6–7. The FAC's allegations are insufficient to plead the factual elements *Interstate Circuit* relied on: that each Hotel Defendant (1) knew that concerted action was contemplated and invited, (2) gave its adherence to and participated in the scheme, and (3) understood that cooperation was essential. *See Barry v. Blue Cross of Cal.*, 805 F.2d 866, 869 (9th Cir. 1986) (citing *Interstate Circuit*, 306 U.S. at 226).

*First*, the FAC does not identify a plausible "invitation" to engage in concerted action. The

---

[2] *Duffy* did not hold that plaintiffs may rely on *Interstate Circuit* without pleading parallel conduct and plus factors. *See Duffy v. Yardi Sys., Inc.*, 758 F. Supp. 3d 1283, 1292 (W.D. Wash. 2024) (determining that the plaintiffs had "adequately alleged an agreement under the parallel conduct and 'plus factor' test of *Twombly* and *Musical Instruments*"); *see also In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758, 799 (D. Minn. 2025) ("[V]irtually all of the caselaw that seems to give legitimacy to a standalone § 1 claim under a hub-and-spoke test also relies on the support of allegations of parallel conduct and plus factors.").

2

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

invitation in *Interstate Circuit* was a specific demand for coordinated action in a private letter sent simultaneously to eight named distributors and required compliance with specified restrictions that would benefit the distributors only if done by each one simultaneously and unanimously. 306 U.S. at 216–17. In contrast, the Opposition does not cite a single communication from IDeaS to any Hotel Defendant that invites, or even suggests, concerted action. *See* Opp. 6–7 (citing ¶¶ 1, 9–10, 171, 205). And the FAC includes no factual allegations sufficient to infer that each Hotel Defendant *knew concerted action was invited* simply by using IDeaS' RMS products while allegedly knowing others were using them, too. *See Cornish-Adebiyi v. Caesars Ent., Inc.*, 2024 WL 4356188, at *5 (D.N.J. Sep. 30, 2024) ("knowing" use of same RMS "not suggestive of culpable conspiracy"); *Gibson v. Cendyn Grp., LLC* ("*Gibson III*"), 148 F.4th 1069, 1083 (9th Cir. 2025) (awareness of competitors' use alone, without more, insufficient to plead an agreement under Section 1).[3]

 *Second*, the FAC does not allege any facts indicating that each Hotel Defendant adhered to an anticompetitive scheme. In *Interstate Circuit*, each distributor suddenly imposed the precise pricing and output restrictions demanded, in a "radical departure" from past practices. *Interstate Circuit*, 306 U.S. at 221–22. In contrast, the FAC alleges Hotel Defendants separately and gradually adopted G3 RMS over 10 years. *See* Mot. 6–7. The Opposition is silent on this critical point, attempting to glaze over it by simply repeating the argument that each Hotel Defendant's mere use of IDeaS' RMS products is sufficient. Opp. 7. It is not. *See Gibson II*, 2024 WL 2060260, at *3 (adoption of RMS over 10 years too long to infer tacit agreement); *Cornish-Adebiyi*, 2024 WL 4356188, at *5 (similar).

 *Third*, the FAC fails to allege the "interdependence" of each Hotel Defendant's use of IDeaS' RMS products. *Barry*, 805 F.2d at 869. The Opposition does not address this requirement. *See* Opp. 6–7. Indeed, the FAC's allegation that Hilton used G3 RMS for several years before any other Hotel Defendant undermines any inference of interdependence. *See* Mot. 8–9.[4]

 The Court previously rejected Plaintiffs' *Interstate Circuit* argument. *See Dai*, 2025 WL 2078835

---

[3] The FAC does not plausibly allege that IDeaS' RMS products coordinate users' pricing or occupancy recommendations or pool multiple users' confidential data provided to IDeaS. *See infra* 6–8.

[4] The Opposition's other cases differ significantly. *See PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 842–43 (9th Cir. 2022) (describing direct "interfirm communications," statements by competitors at several meetings encouraging joint action, and promotion of a white paper "call[ing] for collective action"); *Meyer v. Kalanick*, 174 F. Supp. 3d 817, 824 (S.D.N.Y. 2016) (alleging agreement among Uber drivers to "charge the same fares").

3

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

at *2–5 . The Opposition provides no reason to take a different approach.

### 3. Plaintiffs do not plausibly allege an agreement among Hotel Defendants through parallel conduct and plus factors.

The Opposition's final argument is that the FAC cured the CC's deficiencies and now alleges parallel conduct and plus factors sufficient to infer an agreement among Hotel Defendants. *See* Opp. 7–12. This argument is simply wrong. Instead, the FAC's allegations again are more analogous to the allegations in *Gibson* and *Cornish-Adebiyi* rather than the allegations in *RealPage* and *Duffy*. *See Dai*, 2025 WL 2078835, at *5. The FAC remains deficient and should be dismissed with prejudice.

#### a) No parallel conduct

The FAC's parallel conduct allegations do not address the deficiencies the Court previously identified. *See id.* at *3–4. The Opposition's arguments to the contrary are unavailing and superficial.

*First*, this Court held that the CC failed to allege *when* any Hotel Defendant began using IDeaS' RMS products to supposedly "outsource" pricing to IDeaS. *Id.* at *3. The FAC now alleges that each of the Hotel Defendants began using G3 RMS at different times over 10 years. *See* Mot. 6. That is far too "slow … [to] raise the specter of collusion." *Musical Instruments*, 798 F.3d at 1196; *see also* Mot. 6 (citing cases).[5] In their Opposition, Plaintiffs recycle the same argument that each Hotel Defendant's alleged use of IDeaS' RMS products alone is parallel conduct. *See* Opp. 7. This Court and others have rejected that argument. *See Dai*, 2025 WL 2078835, at *3; *Gibson II*, 2024 WL 2060260, at *3–4; *Cornish-Adebiyi*, 2024 WL 4356188, at *5. The Opposition does not distinguish these cases or otherwise explain why this already-rejected argument should now succeed. *See* Mot. 4–6.

*Second*, the Court held that the CC did not allege facts about any of the Hotel Defendants' rate of adoption of prices recommended by IDeaS' RMS products. *See Dai*, 2025 WL 2078835, at *3. The FAC again includes no well-pleaded factual allegations about any Hotel Defendant's rate of adoption. *See* Mot.

---

[5] Plaintiffs argue that each of Hotel Defendants' alleged adoption of G3 RMS over a 10-year period is sufficient because "conspirators need not enter a conspiracy simultaneously." Opp. 8 (citing *Indus. Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1970)). This argument relies on *Industrial Building Materials*, a case addressing whether a successor company may be liable for a conspirator's prior acts that predate the successor company's acquisition of the conspirator by two years— which is irrelevant to the question whether Plaintiffs have pled *parallel conduct* in support of an attempt to establish a plausible agreement. Plaintiffs' silence in failing to address *Musical Instruments* or the other relevant authorities, *see* Mot. 6, confirms Plaintiffs misstate the law.

4

7–8. Instead, the Opposition argues that the FAC's generic, conclusory allegations that Hotel Defendants adopt pricing recommendations "99%" of the time, *e.g.*, ¶ 99, is sufficient to infer parallel conduct. *See* Opp. 7.[6] But, as Defendants explained, *see* Mot. 7–8, the FAC fails to allege any facts about when, how, or why any Hotel Defendant allegedly decided to adopt pricing recommendations made by IDeaS' RMS products 99% of the time, foreclosing any reasonable inference of parallel conduct.[7]

*Third*, the Court held that the CC did not allege when any Hotel Defendant allegedly began to make "complex and historically unprecedented changes" to room pricing. *See Dai*, 2025 WL 2078835, at *3. But the FAC fails to fix that deficiency because it contains only allegations about the timing for Hilton and Hyatt's purported shifts in business strategy, *see* ¶¶ 70–71, 73–74, while remaining silent as to the other Hotel Defendants. The Opposition attempts to excuse this fatal omission by claiming Plaintiffs need not allege facts showing parallel conduct for all Hotel Defendants because certain Defendants do not "publicly disclose financial results." Opp. 8. But Plaintiffs badly misstate their pleading burden and cite no authority to support their position. And even the FAC's own allegations about Hilton and Hyatt foreclose any reasonable inference of a parallel shift in business strategy as to those two Hotel Defendants because Hilton had allegedly used G3 RMS for eight years (2012) prior to the Covid-19 pandemic and Hyatt did not allegedly use G3 RMS until two years after the pandemic (2022). *See* ¶¶ 25, 37.

The Opposition's remaining points in support of Hotel Defendants' supposed parallel shift to a "price over occupancy" business strategy are unpersuasive. Generic allegations of similar "means" and "motive" (*i.e.*, plus factors)[8] cannot overcome the absence of parallel conduct. *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 391 (9th Cir. 2017). And a parallel shift in business strategy cannot be reasonably inferred solely because "those who made this change were not underbid." Opp. 8. To the extent the Opposition relies on the FAC's allegations regarding the LRV variable and "pricing floors," Defendants addressed those allegations in their Motion. *See* Mot. 8–9 &

---

[6] The Opposition baldly states that Hotel Defendants' alleged adoption of pricing recommendations means that Hotel Defendants "choose to not compete on price." Opp. 7. That is wrong. *See Gibson II*, 2024 WL 2060260, at *6 ("to accept the prices that the algorithm recommends does not plausibly allege an illegal agreement"); *see also* Mot. 7–8 & nn.10, 11.

[7] The Opposition cites *Duffy's* one-sentence conclusion that the plaintiffs in that case alleged parallel conduct. Opp. 8 (citing *Duffy*, 758 F. Supp. 3d at 1292). Without further analysis or any explanation as to its applicability, *Duffy* is not persuasive here.

[8] Plaintiffs do not adequately allege "means" (opportunity) and "motive" to conspire as plus factors. *See infra* 9–10.

5

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

nn.13, 14. Plaintiffs did not respond to Defendants' arguments in the Opposition and thus waive any argument that their allegations concerning LRV or "pricing floors" suffice to allege parallel conduct. *See Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*, 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022) ("If a party fails to respond to an argument made on a motion to dismiss, a court may find such failure constitutes waiver or abandonment of the issue."); *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (similar).

The FAC contains no well-pleaded allegations of parallel conduct to infer an agreement among each of the Hotel Defendants to fix hotel room prices. The Court should dismiss the FAC for this reason.

### b)    No plausible plus factors

Like the CC, the FAC's failure to allege plus factors provides an independent basis for dismissal.

**Exchange of competitively sensitive information.** The Opposition first argues that, as a legal matter, information exchange allegations "can be sufficient" to establish the agreement element of a purported hub-and-spoke price-fixing claim.[9] Opp. 8–9 (citation and internal quotation marks omitted). That is wrong. Circumstantial evidence of a price fixing agreement requires parallel conduct. *See Gibson v. MGM Resorts Int'l*, 2023 WL 7025996, at *4 (D. Nev. Oct. 24, 2023) ("*Gibson I*") (citing *Bona Fide*, 691 F. App'x at 391) ("[W]ithout plausible allegations of parallel conduct, [p]laintiffs' alleged plus factors are not relevant."); *Pork*, 781 F. Supp. 3d at 799 ("[V]irtually all of the caselaw that seems to give legitimacy to a standalone § 1 claim under a hub-and-spoke test also relies on the support of allegations of parallel conduct and plus factors.").

Regardless, the FAC does not include well-pleaded factual allegations that would "permit the Court to reasonably infer an exchange of confidential information." *Dai*, 2025 WL 2078835, at *5. Like the plaintiffs in *Gibson* and *Cornish-Adebiyi*, Plaintiffs "attempt to create an inference of the exchange of nonpublic information … without actually alleging such an exchange." *Gibson I*, 2023 WL 7025996, at *4; *Cornish-Adebiyi*, 2024 WL 4356188, at *5 ("The Amended Complaint goes to rather extraordinary lengths to dance around that [information exchange] allegation with linguistic equivocation in an obvious

---

[9] To the extent the Opposition argues that competitors' sharing of price information, without an agreement, can violate Section 1, that is wrong. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 223 (3d Cir. 2011) ("[T]he exchange of price information still requires showing that the defendants had an agreement.").

6

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

attempt to imply it, but it never unambiguously alleges as much."). Contrary to the Opposition's assertions otherwise, Opp. 1, 3, the FAC does not plausibly allege that IDeaS (i) uses the confidential pricing and occupancy information provided by one Hotel Defendant to create pricing recommendations for another Hotel Defendant, much less that (ii) IDeaS "pools" all of its users' confidential information to improve its algorithms. The Opposition never addresses *any* of Defendants' arguments that identify, specifically, why the FAC includes no well-pleaded allegations to support either assertion. *Compare* Mot. 10–12, *with* Opp. 9. While the Opposition attempts to sidestep this critical deficiency, a closer look at the allegations on which Plaintiffs rely reveals the allegations are insufficient.

   *First*, the FAC includes no well-pleaded factual allegations that IDeaS uses confidential information received from one Hotel Defendant to generate pricing recommendations for any other Hotel Defendant.[10] Just like the CC, the FAC includes plainly conclusory allegations that IDeaS' pricing recommendations are based on "competitor non-public data," *e.g.*, ¶ 10, but such allegations are insufficient under *Twombly*. *See Dai*, 2025 WL 2078835, at *5 ("Plaintiffs' allegations that each Hotel Defendant provides IDeaS with confidential information and that IDeaS uses or pools that information in its algorithms are conclusory."). Additionally, the FAC's allegations that IDeaS uses a Hotel Defendant's "non-public data" as an input to make pricing recommendations, *e.g.*, ¶ 119, do not reasonably suggest that IDeaS uses that Hotel Defendant's non-public data to generate pricing recommendations for *another* Hotel Defendant, or that IDeaS *pools* non-public data it separately receives from multiple Hotel Defendants to make pricing recommendations. The same applies to the FAC's allegations that IDeaS' RMS products analyze "competitor" prices, data, rates, etc., to generate pricing recommendations. *See, e.g.*, ¶¶ 124–26, 128. Those allegations do not reasonably suggest that IDeaS uses the confidential information it receives from one Hotel Defendant to generate pricing recommendations for any other Hotel Defendant.

   *Second*, the FAC includes no well-pleaded factual allegations that IDeaS "teaches" its RMS products by analyzing pooled confidential information IDeaS separately receives from different Hotel

---

[10] The Opposition does not respond to Defendants' arguments that the FAC's Demand360 allegations do not reasonably suggest an exchange of confidential information between Hotel Defendants, Mot. 12–13, and therefore waives the issue. *See, e.g.*, *Rozier*, 2022 WL 2199938, at *3 (citing cases); *Ramirez*, 941 F. Supp. 2d at 1210 & n.7.

7

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

Defendants. The FAC includes numerous statements that IDeaS' RMS products improve by analyzing data received from different properties. *E.g.*, ¶¶ 85, 90.[11] But those statements do not state or reasonably suggest that IDeaS *pools* multiple properties' confidential data to do so. The FAC also includes generic statements that IDeaS' RMS products evaluate "all" data. *Id.*[12] Those allegations do not permit a reasonable inference that properties' confidential information is combined (*i.e.*, pooled) to improve IDeaS' RMS products.[13]

Plaintiffs' continued reliance on linguistic contortions demonstrates that the FAC's allegations, like the CC's, are again "more analogous" to *Cornish-Adebiyi* and *Gibson*, and not *RealPage* and *Duffy*. *Dai*, 2025 WL 2078835, at *5. The FAC's allegations are nothing like those described in *RealPage*. There, the court described RealPage's RMS as a "melting pot" for competitor data. *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 512 (M.D. Tenn. 2023). For example, RealPage's RMS maintained a "peer list" for each client that allowed the client to review and request which competitors' confidential "transaction data will be used as an input in RealPage's algorithm for that client's pricing." *Id.* at 512. The FAC here contains no similar allegations. *RealPage* expressly distinguished the specific allegations there from those in *Gibson*, which Plaintiffs' allegations more closely resemble. *See id.*; *see also Gibson II*, 2024 WL 2060260, at *4 (identifying the same difference).

**Actions against self-interest.** The FAC does not allege any Hotel Defendant acted against its self-interest by using IDeaS' RMS products. The Opposition's arguments to support this plus factor, Opp. 9–11, depend entirely on the FAC's information exchange allegations, which, as just described, are deficient. The Opposition makes only one unique argument—that "raising rental prices regardless of occupancy and/or competitiveness would, in a competitive market, work against each [competitor defendant's] economic self-interest." Opp. 10 (citing *Duffy*, 758 F. Supp. 3d at 1293). But the FAC includes no well-

---

[11] For example, paragraph 85 includes an IDeaS employee's statement that "[i]mplementing G3 RMS in tens of thousands of properties … facilitates continuous improvement." That statement does not reasonably suggest that all those properties' confidential information is *combined. See also* ¶ 90 (similar allegation regarding "the data [IDeaS] had from our 16,000 hotels").

[12] *E.g.*, ¶¶ 85 n.24 ("G3 RMS directly integrates all key data sources into optimization."); 90 (IDeaS "look[s] at all the data we collect from millions and millions of datapoints around the world.").

[13] The FAC includes numerous other allegations in other contexts that fail for the same reason. *E.g.*, ¶¶ 84 ("comprehensive datasets," "all key data sources"), 123 ("all key data sources"). None of the FAC's allegations permits a reasonable inference that IDeaS pools information it receives from multiple Hotel Defendants.

8

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

pleaded factual allegations that Hotel Defendants collectively raised prices regardless of occupancy by using IDeaS' RMS products. The Opposition cites only (i) conclusory, group-pleading assertions that Hotel Defendants increased prices, ¶¶ 11, 69, 168; (ii) overinclusive annual average daily rate ("ADR"), revenue per available room ("RevPAR"), and occupancy statistics for *all* hotel rooms nationwide, ¶ 170; and (iii) generic ADR and occupancy statistics from only Hilton and Hyatt, ¶¶ 70–71. None of those allegations is sufficient to plead the type of "'extreme action against self-interest' contemplated by this circuit as a plus factor." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 50 (9th Cir. 2022) (quoting *Musical Instruments*, 798 F.3d at 1195). Indeed, the FAC's allegation that Hilton alone used G3 RMS for several years before *any other* Hotel Defendant's adoption, *see* Mot. 3, underscores that each Hotel Defendant had independent, self-interested reasons to use G3 RMS that had nothing to do with its competitors using it. The Opposition offers *no* response to this point.

**Opportunity and invitation to conspire.** The Opposition does not contest that the FAC includes no allegations "about what agreements were made, if any," *Dai*, 2025 WL 2078835, at *4, by any Hotel Defendants at the alleged industry meetings. *See* Mot. 10; Opp. 11. Plaintiffs therefore have not adequately pled this plus factor. *Dai*, 2025 WL 2078835, at *4. That unnamed "c-level executives" attended meetings and allegedly discussed "using IDeaS' RMS to maximize revenue" is not enough to suggest an illegal agreement. *See* Mot. 10 (collecting cases); *see also Kelsey K. v. NFL Enterprises, LLC*, 254 F. Supp. 3d 1140, 1145 (N.D. Cal. 2017) (allegations of a "broad range of routine annual events" are insufficient without "factual details … tending to support the inference of unlawful conduct"), *aff'd*, 757 F. App'x 524 (9th Cir. 2018).[14] The FAC alleges no invitation to collude, *see supra* 2–3, making the FAC's allegations unlike *Flextronics*, *see supra* n.14.

**Motive to conspire.** The Court should again reject Plaintiffs' argument that an industry-wide loss of revenue motivated each Hotel Defendant to enter a conspiracy. *See Dai*, 2025 WL 2078835, at *4 (citing *Musical Instruments*, 798 F.3d at 1194–95). The Opposition simply recites the same argument and

---

[14] Plaintiffs' cited cases are distinguishable because they included far more detailed factual allegations. *See Flextronics Int'l USA, Inc. v. Panasonic Hldgs. Corp.*, 2023 WL 4677017, at *2 (9th Cir. July 21, 2023) (identifying specific competitor communications at specified meetings and an industry participant's statement that "it is not the time to reduce prices"); *In re Cal. Bail Bond Antitrust Litig.*, 2022 WL 19975276, at *13 (N.D. Cal. Nov. 7, 2022) (identifying "specific combinations of [d]efendants in attendance at which [d]efendants allegedly discussed, monitored, and furthered the conspiracy."); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1148 (N.D. Cal. 2009) (same).

9

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

case the Court previously considered and rejected, *see* Opp. 11 (citing *B & R Supermarket, Inc. v. Visa, Inc.*, 2016 WL 5725010 (N.D. Cal. Sep. 30, 2016)), without identifying factual allegations "about how the pandemic impacted the Hotel Defendants rather than the hotel industry in general or why such a motive would be more indicative of collusion than market interdependence." *Dai*, 2025 WL 2078835, at *4. Plaintiffs offer no reason for the court to reconsider its prior decision. Thus, Plaintiffs have again failed to plead the "motive" plus factor.

**Market Structure.** The Opposition recites the same structural characteristics—barriers to entry, high concentration, and excess capacity—that the Court previously found insufficient on their own to permit a reasonable inference of an agreement among Hotel Defendants. *See* Opp. 12; *Dai*, 2025 WL 2078835, at *4. If anything, the FAC's market structure allegations are even weaker than the CC's. The FAC includes no allegations about concentration or excess capacity that purport to describe the Plaintiffs' newly proposed *upscale* hotel room market. *See, e.g.*, ¶¶ 69–75, 198.[15]

As with the CC, the FAC's plus factors, individually and holistically, are insufficient to infer a plausible agreement among Hotel Defendants. Because Plaintiffs fail to plead either parallel conduct or plus factors, they have failed to allege the horizontal agreement necessary for their Section 1 claim.

**B.    Plaintiffs Fail to Allege an Unreasonable Restraint of Trade.**

The presumptive rule of reason applies. The Opposition provides no convincing reason to apply a different standard because the challenged conduct is far from obviously anticompetitive. And the FAC fails to allege facts plausibly showing direct or indirect evidence of anticompetitive effects from Hotel Defendants' use of IDeaS' RMS products. The Court should dismiss the FAC for failure to allege an unreasonable restraint of trade.

**1.    The rule of reason applies.**

The Opposition's flawed arguments do not support applying the *per se* rule here.

*First*, the Opposition argues that "sharing competitively sensitive price and demand data among competitors is per se unlawful, particularly when it impacts price and restrains competition." Opp. 12–13

---

[15] The Opposition's reliance on *Flextronics* is misplaced. *See* Opp. 12. In *Flextronics*, the court held only that market structure allegations, including "[e]xtreme market concentration," were sufficient when combined with allegations plausibly supporting four additional plus factors. *Flextronics*, 2023 WL 4677017, at *4.

10

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

(citing *United States v. Container Corp. of Am.*, 393 U.S. 333 (1969)). Binding Supreme Court precedent says otherwise: "the dissemination of price information is not itself a per se violation." *United States v. Citizens & S. Nat. Bank*, 422 U.S. 86, 113 (1975); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.16 (1978) (same).

*Second*, the Opposition argues for an inference that Hotel Defendants forego competing on price because they allegedly accept pricing recommendations "99%" of the time, ¶ 99. *See* Opp. 5, 13. Such an inference is not reasonable based on what the FAC actually alleges. The FAC alleges IDeaS' RMS products are designed to maximize a hotel's revenue, ¶ 80, and improve profitability, ¶ 94. Doing so provides no reason to assume it produces anticompetitive effects. *Cf. Gibson III*, 148 F.4th at 1083 ("Rather than eliminating competition, pricing one's hotel rooms in a manner calculated to maximize profits is how one competes. [RMS], therefore, holds itself out as a tool in the struggle for commercial advantage; by itself, it does not take away that struggle.").

*Third*, the Opposition labels the FAC's allegations as price-fixing. Opp. 12. But labels and conclusions are insufficient to warrant application of the *per se* rule. Fundamentally, the Opposition fails to explain how each Hotel Defendant's alleged use of IDeaS' RMS products to generate *individualized* pricing recommendations that may move *independently* from those offered to one's competitors resembles "a traditional straightforward price-fixing conspiracy." *RealPage*, 709 F. Supp. 3d at 520; *see also* Mot. 13. Instead, Plaintiffs rely heavily on generic quotations from the Supreme Court's 1940 decision in *Socony-Vacuum*. *See* Opp. 12. The Court should not adopt Plaintiffs' "mechanical analysis" of *Socony-Vacuum* without first evaluating whether each Hotel Defendant's alleged use of IDeaS' RMS products would produce similar anticompetitive results. *McCarthy v. Intercontinental Exch., Inc.*, 2021 WL 6072817, at *4 (N.D. Cal. Dec. 23, 2021) (rejecting application of the *per se* rule and stating that "legal developments in the 81 years since *Socony* was published cast considerable doubt on plaintiffs' rather mechanical analysis").[16] "It does not denigrate the *per se* approach to suggest care in application." *Nw.*

---

[16] The *Duffy* court, respectfully, made that very error. *See Duffy*, 758 F. Supp. 3d 1296–97 (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 220–23 (1940), and *United States v. Trenton Potteries Co.*, 273 U.S. 392, 397 (1927)). The *Duffy* court recited passages from *Socony-Vacuum* and *Trenton Potteries* for the generic proposition that the *per se* rule applies to any "horizontal price-fixing agreement," but failed to evaluate whether the alleged common use of RMS would—like traditional, naked price fixing—"always or almost always tend to restrict competition and decrease output." *Cal. ex*

1    *Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 298 (1985).

2    The Court should evaluate Plaintiffs' claim under the presumptive rule of reason.

3        **2.    Plaintiffs fail to plead an unreasonable restraint of trade under the rule of reason.**

4

5    The FAC does not plead direct or indirect evidence of anticompetitive harm; dismissal is required.

6        **a)    Plaintiffs fail to plead direct evidence of anticompetitive effects.**

7    Pleading direct evidence requires factual allegations of "reduced output, increased prices, or

8    decreased quality in the relevant market." *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018); *Top Rank,*

9    *Inc. v. Haymon*, 2015 WL 9948936, at *8 (C.D. Cal. Oct. 16, 2015) (requiring allegations of "evidentiary

10   facts" to plead direct evidence). The Opposition argues only that the FAC alleges increased prices. Opp.

11   13 ("Plaintiffs plead facts showing the conspiracy caused prices for hotel rooms to increase ….") (citing

12   ¶¶ 103, 185–94). None of the cited paragraphs provide non-conclusory allegations sufficient to plead

13   direct evidence in the form of increased hotel room prices.

14   *First*, most of the FAC paragraphs the Opposition cites do not even address increased prices for

15   hotel rooms, let alone increased prices in Plaintiffs' newly proposed relevant product market of "upscale"

16   hotel rooms.[17] And none of the cited allegations plausibly alleges increased prices for upscale hotel rooms

17   caused by the conduct Plaintiffs allege to be unlawful. *See Intel Corp. v. Fortress Inv. Grp., LLC*, 2022

18   WL 16756365, at *2 (9th Cir. 2022); *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 118 (2d Cir. 2021).

19   *Second*, the only cited allegations that purport to connect increased hotel room prices to Hotel

20   Defendants' use of IDeaS' RMS products are the type of conclusory assertions of direct evidence that

21   courts routinely reject.[18] *See Top Rank*, 2015 WL 9948936, at *8; *Dominick v. Collectors Universe, Inc.*,

22   2012 WL 4513548, at *7 (C.D. Cal. Oct. 1, 2012); *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 2022

23

24   *rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1137 (9th Cir. 2011) (internal quotation marks omitted) (citing *Broad. Music, Inc. v. Columbia Broad. Sys. Inc.*, 441 U.S. 1, 19–20, (1979)); *see Duffy*, 758 F. Supp. 3d

25   at 1297 ("When a conspiracy consists of a horizontal price-fixing agreement, no further testing or study is needed.").

26   [17] The FAC's anecdote from a hotel manager at a non-Defendant hotel in Florence, Italy, is wholly insufficient to show increased prices in the U.S. or any Relevant Sub-market. *See* ¶ 190 & n.83.

27   [18] *See* ¶¶ 188 (stating Plaintiffs "have paid and are paying higher prices for hotel rooms than they otherwise would pay had Defendants not engaged in their conspiracy"); 194 (stating that the alleged

28   "anticompetitive conduct has caused Plaintiffs and Class members to pay artificially high prices for hotel rooms.").

12

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

1    WL 2791201, at *7 (E.D. Cal. July 15, 2022).

2                    **b)    Plaintiffs fail to plead indirect evidence of anticompetitive effects.**

3          **Market Definition:** The Opposition does not seriously attempt to defend the absence of factual

4    support for the FAC's "upscale hotel rooms" product market. *See* Opp. 14. Instead, the Opposition argues

5    that market definition is typically a factual issue, not a legal one. *See* Opp. 14. But "a product market must

6    still be plausible," even at the pleading stage. *Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006,

7    1022 (N.D. Cal. 2021). Defendants are not merely quibbling about the "outer boundaries," Opp. 14, of

8    Plaintiffs' product market definition. *See* Mot. 13–14. The FAC fails entirely to identify the contours of

9    this putative market—it is wholly unclear as to what constitutes an "upscale" hotel room (and how an

10   "upscale" hotel room differs from other hotel rooms).[19] *See* Mot. 14. The Opposition's only response is to

11   point to the FAC's implausible allegation that "short-term rentals" are not reasonable "substitutes for *hotel*

12   *rooms*," Opp. 14 (citing ¶ 201 (emphasis added)). But that barebones allegation does not identify which

13   products are in and out of the *upscale* hotel room market.

14         The FAC's MSA-based geographic market definition is similarly unsupported. *See* Mot. 14; Opp.

15   14. The FAC alleges that many consumers of hotel rooms are willing to travel only limited distances.

16   ¶ 184. The Opposition fails to address why commuting patterns are relevant to where hotel guests choose

17   to stay. *See RealPage, Inc*, 709 F. Supp. 3d at 529–30 (dismissing student plaintiff claims using

18   commuting-pattern based MSAs to define market for university student housing).

19         **Market Power:** The FAC does not allege facts sufficient to permit a reasonable inference that

20   Hotel Defendants have market power for upscale hotel rooms in any putative market. In fact, it does not

21   even allege which Hotel Defendants, if any, actually *have* upscale hotel rooms in any of the Relevant Sub-

22   markets.[20] *See* ¶¶ 24–37 (no reference to "upscale" hotels or hotel rooms). Plaintiffs' allegation that Hotel

23   Defendants are "several of the largest hotel operators in the U.S." ¶¶ 1, 198, is far too vague and generic

24

25         [19] The FAC added only one sentence to the CC when changing its product market definition from
     all hotel rooms to "upscale" hotel rooms. *See* ECF No. 145 at 60.
26         [20] The FAC's definition of "Relevant Sub-markets" is not limited to upscale hotel rooms. *See* ¶ 1
     n.1 ("The Relevant Sub-markets are the markets for hotel room rentals" in 17 MSAs). Because the FAC
27   attempts to allege market power only with reference to that term, the FAC includes no factual allegations
     about any or all Hotel Defendants' upscale hotel rooms. For the same reason, the FAC also does not allege
28   which, if any, of the named Plaintiffs claims to have stayed in an upscale hotel room during the Class
     Period. *See* ¶¶ 13–22; ECF No. 145 at 7–8.

13

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

to plausibly plead market power. *See Dominick*, 2012 WL 4513548, at \*7 (allegation that defendant was the "largest" and "principal" dealer in market insufficient). Allegedly being among several of the "largest" hotel operators says little about Hotel Defendants' share of upscale hotel room rentals, specifically. Budweiser may be one of the largest beer brands in the U.S.; that does not mean it is one of the largest premium beer brands. *Cf. Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972–73 (9th Cir. 2008) (allegations defendant was an "important player" in a different market insufficient to allege market power); *Top Rank*, 2015 WL 9948936, at \*7–9 (market power allegations that did not align with alleged relevant markets insufficient). The same problem exists from a geographic market perspective. Alleging that Hotel Defendants are several large hotel operators nationally does not permit a reasonable inference about their positions in any of the relevant MSAs. The FAC's allegation that "the U.S. hotel market is concentrated," ¶ 198, also fails for these reasons—it includes a broader set of products than Plaintiffs' putative product market, in a broader geography.

The Opposition's attempt to infer market power from its generic allegation that "IDeaS generates tens of millions of booking decisions daily" fails. Opp. 15 (citing ¶ 198). *First*, IDeaS is a software company. It does not operate in Plaintiffs' proposed upscale hotel room rental market, and Plaintiffs do not explain why the number of IDeaS' daily "booking decisions" is relevant to show Hotel Defendants' market power in that proposed market. *Second*, the FAC does not allege what constitutes a "booking decision."[21] Regardless, these undefined "booking decisions" are apparently neither limited to those provided to Hotel Defendants' upscale hotel rooms in the relevant MSAs nor reflective of rooms that customers actually booked. Without any factual allegations to explain what the number of daily "booking decisions" IDeaS generates has to do with Hotel Defendants' share of upscale hotel room rentals in those MSAs, the Court is left to interpret the number in a vacuum.

**Harm to Competition:** The FAC does not allege facts making it plausible that Hotel Defendants' use of IDeaS' RMS products harms competition. Plaintiffs first argue that the FAC alleges increased prices, citing the same allegations they use for direct evidence. Opp. 15 (citing ¶¶ 185–94.) As explained above, those allegations are insufficient. *See supra* 12–13. Next, Plaintiffs argue that Hotel Defendants

---

[21] The FAC defines "pricing decisions" and "occupancy decisions," ¶ 2 n.2, but not "booking decisions." It elsewhere references "pricing and booking decisions," ¶ 76, suggesting that they are not the same.

14

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

outsource price competition to IDeaS. Opp. 15 (citing ¶¶ 98–118). That argument is also unsupported. *See supra* 4–5 & n.6. Last, Plaintiffs argue that Hotel Defendants are charging "record prices without corresponding record (or even average) demand." Opp. 15 (citing ¶¶ 69, 179). Both cited paragraphs include similar, conclusory statements that Hotel Defendants are charging "highest all-time" or "record-high" prices, without a "corresponding increase" in occupancy. ¶¶ 69, 179. They say nothing about prices, costs, or occupancy for *upscale hotel rooms in the relevant MSAs*, and thus fall short of plausibly alleging harm to competition. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).

### C.    The Court Should Not Grant Leave to Amend.

Ninth Circuit law establishes that dismissal with prejudice is appropriate where amendment would be futile. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). Amendment is futile here. The FAC demonstrates that Plaintiffs cannot cure the fatal defects this Court previously identified. Plaintiffs' Opposition highlights the specific instructions from the Court about the CC's deficiencies, Opp. 1. *See Salameh*, 726 F.3d at 1133; *Reilly v. Apple Inc.*, 2022 WL 1215305, at *8 (N.D. Cal. Apr. 25, 2022) (citing *Kendall v. Visa U.S.A.*, Inc., 518 F.3d 1042, 1051–52 (9th Cir. 2008)) (finding futility because "[p]laintiff was unable to cure any of the deficiencies pointed out by the Court is its last dismissal order, demonstrating that Plaintiff does not have the necessary facts to cure the issues with the complaint"). Yet, Plaintiffs did not change course. The Court should accordingly presume that Plaintiffs cannot cure the noted deficiencies consistent with Rule 11, in particular given that the Opposition's boilerplate, one-sentence request for leave to amend identifies no additional information that would warrant the Court's granting leave to amend again. *See U.S. Care, Inc. v. Pioneer Life Ins. Co. of Ill.*, 244 F. Supp. 2d 1057, 1065 (C.D. Cal. 2002) (denying a "bare request" for leave to amend for failure to identify the "particular grounds" that would overcome dismissal). Granting leave to amend would only force the parties and the Court to address the same deficiencies for a third time.

### III.    CONCLUSION

For the reasons stated above, the FAC should be dismissed with prejudice.

15

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

Dated: October 20, 2025

Respectfully submitted,

*/s/ Ann H. MacDonald*

*/s/ Michael Stortz*

**ARENTFOX SCHIFF LLP**
Matthew B. Mock (SBN 316380)
44 Montgomery Street, 38th Floor
San Francisco, CA 94104
Telephone: (415) 757-5500
matthew.mock@afslaw.com

Ann H. MacDonald (*pro hac vice*)
Kylie S. Wood (SBN 331789)
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5500
ann.macdonald@afslaw.com
kylie.wood@afslaw.com

Suzanne L. Wahl (*pro hac vice*)
350 S. Main St., Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1517
suzanne.wahl@afslaw.com

*Attorneys for Defendant Wyndham Hotels &*
*Resorts, Inc.*

**K&L GATES LLP**
Michael E. Martínez (*pro hac vice*)
Lauren Norris Donahue (*pro hac vice*)
John Susoreny (*pro hac vice*)
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8116
michael.martinez@klgates.com
lauren.donahue@klgates.com
john.susoreny@klgates.com

Derek A. Sutton (*pro hac vice*)
301 Hillsborough St., Ste. 1200
Raleigh, North Carolina 27603
Telephone: (919) 743-7331
Facsimile: (919) 516-2024
derek.sutton@klgates.com

Michael Stortz (SBN 139386)
4 Embarcadero Ctr., Ste 1200
San Francisco, California 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220
michael.stortz@klgates.com

*Attorneys for Defendant IDeaS, Inc.*

16

/s/ Christopher M. Curran

**WHITE & CASE LLP**
Christopher M. Curran (*pro hac vice*)
J. Mark Gidley (*pro hac vice*)
J. Frank Hogue (*pro hac vice*)
701 13th Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
ccurran@whitecase.com
mgidley@whitecase.com
fhogue@whitecase.com

Jeremy K. Ostrander (SBN 233489)
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
jostrander@whitecase.com

*Attorneys for Defendant Four Seasons Hotels
Limited*

/s/ Neal Potischman

**DAVIS POLK & WARDWELL LLP**
Neal Potischman (SBN 254862)
Natalie Stoecklein (SBN 350939)
900 Middlefield Road
Redwood City, CA 94063
Telephone: (650) 752-2021
Facsimile: (650) 752-3621
neal.potischman@davispolk.com
natalie.stoecklein@davispolk.com

D. Jarrett Arp (*pro hac vice*)
Mari Grace (*pro hac vice*)
1050 17th Street NW
Washington, DC 20036
Telephone: (202) 962-7150
Facsimile: (202) 962-7102
jarrett.arp@davispolk.com
mari.grace@davispolk.com

Tina Joe (*pro hac vice*)
450 Lexington Ave
New York, NY 10017
Telephone: (212) 450-3541
Facsimile: (212) 701-6541
tina.joe@davispolk.com

*Attorneys for Defendant Hilton Domestic
Operating Company Inc.*

/s/ Douglas E. Litvack

**JENNER & BLOCK LLP**
Douglas E. Litvack (*pro hac vice*)
Lindsay C. Harrison (*pro hac vice*)
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
dlitvack@jenner.com
lharrison@jenner.com

An N. Tran
455 Market Street, Suite 2100
San Francisco, CA 94105
Tel: (628) 267-6800
atran@jenner.com

*Attorneys for Defendant Hyatt Corporation*

/s/ Eliot F. Turner

**NORTON ROSE FULBRIGHT US LLP**
Joshua D. Lichtman (SBN 176143)
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Telephone: 213-892-9226
Facsimile: 213-892-9494
joshua.lichtman@nortonrosefulbright.com

Eliot F. Turner (*pro hac vice*)
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: 713-651-5113
Telecopier: 713-651-5246
eliot.turner@nortonrosefulbright.com

*Attorneys for Defendant Omni Hotels Management
Corporation*

17

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(h)(3), I, Michael Stortz, hereby attest that concurrence in the filing of this document has been obtained from each of the above signatories.

Dated: October 20, 2025

By: /s/ Michael Stortz
Michael Stortz

18

Defs.' Reply Memo. in Support of Joint Mot. To Dismiss | Case No. 4:24-cv-02537-JSW